DUSTIN R. JONES, SBN 251335
E-MAIL: djones@ftblaw.com
JON F. GAUTHIER, SBN 101724
E-MAIL: jgauthier@ftblaw.com
THOMAS F. FEERICK JR., SBN 311191
E-MAIL: tfeerick@ftblaw.com

**FINCH, THORNTON & BAIRD, LLP**
ATTORNEYS AT LAW
4747 EXECUTIVE DRIVE – SUITE 700
SAN DIEGO, CALIFORNIA 92121-3107
TELEPHONE: (858) 737-3100
FACSIMILE: (858) 737-3101

Attorneys for Plaintiff Willkom, Inc.

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In regarding,<br><br>UNITED STATES DISTRICT OF AMERICA FOR THE USE AND BENEFIT OF WILLKOM, INC., a California corporation<br><br>    Plaintiff,<br><br>v.<br><br>WEST POINT CONTRACTORS, INC., an Arizona corporation; TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA, a Connecticut corporation; and DOES 1 through 30,<br><br>    Defendants. | CASE NO:   **'18CV1813 AJB MDD**<br><br>COMPLAINT FOR:<br><br>(1)  BREACH OF CONTRACT;<br>(2)  RECOVERY ON MILLER ACT PAYMENT BOND;<br>(3)  REASONABLE VALUE; and<br>(4)  BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING. |

## GENERAL ALLEGATIONS

1.    This action is brought pursuant to, and jurisdiction is conferred by, Title 40, United States Code, sections 3131-3133.

2.    Venue in this Court is proper, as the contract for which the Miller Act payment bond was issued and was to be performed are within this judicial district of the United States.

/ / / / /

/ / / / /

3.      Use-plaintiff Willkom, Inc. ("Willkom") is, and at all relevant times was, a corporation duly organized and existing under and by virtue of the laws of the State of California and licensed to perform the work described below.

4.      Defendant West Point Contractors, Inc. ("WPCI") is, and at all relevant times was, a corporation duly organized and existing under and by virtue of the laws of the State of Arizona and purportedly qualified to transact intra-state business within the state of California.

5.      Defendant Travelers Casualty and Surety Company of America ("Travelers") is, and at all relevant times was, a Connecticut corporation authorized and licensed to do business and doing business as a surety issuing bonds required by law or required by contracts with the United States of America and various agencies within the jurisdiction of this Court.

6.      Willkom does not know the true names or capacities of defendants sued as DOES 1 through 30 and, therefore, sues them by fictitious names. Willkom is informed, believes and thereon alleges that DOES 1 through 30 are in some way responsible for the events and damages described in this complaint. Willkom will seek leave to amend this complaint when the true names or capacities of these defendants have been ascertained.

<u>FIRST CLAIM FOR RELIEF</u>

(Breach of Contract – Against WPCI and DOES 1 through 20)

7.      Willkom realleges and incorporates by reference paragraphs 1 through 6, above, as though set forth in full at this point.

8.      Willkom is informed and believes that on or about June 29, 2017 WPCI, as the general contractor, entered into a written contract with the United States of America ("Government") by and through the Naval Facilities Engineering Command ("NAVFAC"), Contract No. N62473-17-D-1411 ("Prime

/ / / / /

/ / / / /

FINCH, THORNTON &
BAIRD, LLP
4747 Executive
Drive - Suite 700
San Diego, CA 92121
(858) 737-3100

2

COMPLAINT

Contract") to perform certain work on a construction project known as the Task Order 2 Building 61 Roof Repairs Project at the 32nd Street Naval Base in San Diego, California (the "Project").

9.      On or about September 25, 2017, Willkom entered into a written subcontract with WPCI for Willkom to perform certain work on the Project, consisting of the supply and installation of roofing and other items.  A true and correct copy of the Subcontract is attached as Exhibit 1 and is incorporated by reference.

10.      Pursuant to the Subcontract, WPCI agreed to pay Willkom $401,119.54 (the "Subcontract Price") for labor, services, materials, equipment and supplies, subject to increase for additional labor, services, materials, equipment and supplies provided by Willkom for use and inclusion on the Project.  WPCI agreed to pay Willkom any outstanding balance on the Subcontract that came due as a result of the labor, services, materials, equipment and supplies Willkom furnished to the Project.

11.      Pursuant to the Subcontract, Willkom provided such labor, services, materials, equipment and supplies to the Project, which were incorporated into the Project.

12.      Willkom has fully and completely performed all obligations required to be performed by Willkom under the Subcontract or has been excused from performance thereof, and all of the conditions precedent to the performance on the part of WPCI have occurred.

13.      WPCI has failed and refused to perform its obligations under the Subcontract, in that only part of the Subcontract Price has been paid and Willkom remains owed sums for the value of labor, services, materials, equipment and supplies it provided to the Project at the direction of WPCI.

/ / / / /

/ / / / /

FINCH, THORNTON &
BAIRD, LLP
4747 Executive
Drive - Suite 700
San Diego, CA 92121
(858) 737-3100

3

COMPLAINT

14.     To date, WPCI has paid Willkom a total of only $226,756.76 for its work under the Subcontract, leaving at least $174,362.78 due, owing and unpaid to Willkom.

15.     As a result of WPCI's and DOES 1-20's failure and refusal to pay Willkom, Willkom has been damaged in an amount not yet fully ascertained and according to proof at trial, but at least $174,362.78, together with interest at the maximum legal rates from dates according to proof.

16.     Pursuant to the Subcontract, including but not limited to section 5.7 thereof, Willkom is entitled to recover attorneys' fees and costs incurred as a result of defendant WPCI's breach of the Subcontract. Such amounts shall be determined by the court and included in the judgment in this action.

<u>SECOND CLAIM FOR RELIEF</u>

(Recovery on Miller Act Payment
Bond – Against WPCI, Travelers, and DOES 21 through 30)

17.     Willkom realleges and incorporates by reference paragraphs 1 through 16, above, as though set forth in full at this point.

18.     Willkom is informed and believes that pursuant to the Prime Contract, WPCI agreed to construct, alter, or repair a public building or work of improvement known as the Project.

19.     Willkom is informed and believes that under United States Code, Title 40, sections 3131 through 3134, defendant WPCI, as principal, and defendant Travelers, as surety, executed and delivered a payment bond, Bond No. 106725444 (the "Payment Bond"), to the Government, whereby WPCI and Travelers bound themselves for the purpose of allowing a joint action or actions against them, and bound themselves in the sum of $289,115.00. A true and correct copy of the Payment Bond is attached as Exhibit "2" and is incorporated by reference. The Payment Bond was delivered to and accepted by the Government and inures to the benefit of Willkom.

FINCH, THORNTON &
BAIRD, LLP
4747 Executive
Drive - Suite 700
San Diego, CA 92121
(858) 737-3100

4

20. Willkom has fully and completely performed all obligations required to be performed by it and all of the conditions precedent to the performance on the part of WPCI and Travelers under the Payment Bond have occurred.

21. WPCI and Travelers have failed and refused to perform their obligations under the Payment Bond, in that only part of the price of the Subcontract has been paid, and Willkom remains owed sums for the value of labor, services, materials, equipment and supplies it provided to the Project at the direction of WPCI.

22. Willkom last furnished labor, services, materials, equipment or supplies to the Project within one year immediately preceding the date the complaint in this action was and is filed.

23. Although a period of 90 days has now elapsed since Willkom last provided labor, services, materials, equipment or supplies to WPCI for inclusion in the Project, Willkom was not required to provide WPCI with written notice of its claim within 90 days of completion of its work based on Willkom's direct contractual relationship with WPCI.

24. To date, Willkom has incurred costs of $401,119.54, yet WPCI has paid Willkom a total of only $226,756.76, leaving at least $174,362.78 due, owing and unpaid to Willkom under the Payment Bond for Willkom's work on the Project.

25. As a result of WPCI's, Travelers' and DOES 21-30's failure and refusal to pay Willkom's claim under the Payment Bond for Willkom's work on the Project, Willkom has been damaged in an amount which is not yet fully ascertained and according to proof at trial, but at least $174,362.78, together with interest at the maximum legal rate from dates according to proof.

26. Under the Payment Bond, WPCI, Travelers and DOES 21-30 are obligated to provide payment to Willkom for work performed on the Project. Accordingly, as a result of WPCI's failure to compensate Willkom for the work

FINCH, THORNTON &
BAIRD, LLP
4747 Executive
Drive - Suite 700
San Diego, CA 92121
(858) 737-3100

5

COMPLAINT

performed, WPCI, Travelers and DOES 21-30 are obligated to pay Willkom at least $174,362.78, together with interest at the maximum legal rates from dates according to proof.

27. Pursuant to the Subcontract and as provided by law, Willkom is entitled to recover against defendants attorneys' fees and costs incurred as a result of WPCI's and Travelers' failure to compensate Willkom. Such amounts shall be determined by the Court and included in the judgment in this action.

## THIRD CLAIM FOR RELIEF

(Reasonable Value – Building 61 Repairs
Project – Against WPCI and DOES 1 through 20)

28. Willkom realleges and incorporates by reference paragraphs 1 through 27, above, as though set forth in full at this point.

29. Within the last two years, Willkom furnished construction labor, materials and equipment to WPCI for work on the Project, at WPCI's request, who promised to pay Willkom the reasonable value of such labor, materials, and equipment.

30. At all times mentioned, the total and reasonable value of labor, materials and equipment furnished by Willkom to WPCI for work on the Project was, and is, the sum of at least $401,119.54.

31. Willkom has only received $226,756.76 for its work on the Project. Despite Willkom's demands, there is now due, owing, and unpaid the balance of at least $174,362.78, together with interest at the maximum legal rate from dates according to proof.

## FOURTH CLAIM FOR RELIEF

(Breach Of The Covenant Of Good Faith And
Fair Dealing – Against Defendants WPCI and DOES 1-20)

32. Willkom realleges and incorporates by reference paragraphs 1 through 31, above, as though set forth in full at this point.

FINCH, THORNTON &
BAIRD, LLP
4747 Executive
Drive - Suite 700
San Diego, CA 92121
(858) 737-3100

6

COMPLAINT

33.     There is an implied promise of good faith and fair dealing under the Subcontract.  This means that defendants would not do anything to unfairly interfere with the right of Willkom to receive the benefits of the Subcontract.

34.     Willkom did all, or substantially all of the significant things that the subcontract required it to do, or it was excused from having to do those things.

35.     All conditions required for defendants' performance had occurred or were excused.

36.     Defendants unfairly interfered with Willkom's right to receive the benefits of the Subcontract.

37.     Willkom was harmed by defendants' conduct in unfairly and improperly interfering with Willkom's right to receive the benefits of the Subcontract, in the amount of at least $174,362.78.

38.     Willkom is entitled to punitive damages because of defendants' willful, oppressive, and bad-faith conduct.

WHEREFORE, the United States of America, for the use and benefit of Willkom, prays for judgment against defendants, as follows:

ON THE FIRST CLAIM FOR RELIEF:

1.     For general, special and consequential damages in an amount not yet fully ascertained but at least $174,362.78, and according to proof at trial;

2.     For interest on all sums at the maximum legal rates allowed by law from dates according to proof; and

3.     For attorneys' fees and costs.

ON THE SECOND CLAIM FOR RELIEF:

1.     For general, special and consequential damages in an amount not yet fully ascertained but at least $174,362.78, and according to proof at trial; and

2.     For interest on all sums at the maximum legal rates allowed by law from dates according to proof; and

3.     For attorneys' fees and costs.

FINCH, THORNTON &
BAIRD, LLP
4747 Executive
Drive - Suite 700
San Diego, CA 92121
(858) 737-3100

7

COMPLAINT

ON THE THIRD CLAIM FOR RELIEF:

1.      For general, special and consequential damages in an amount not yet fully ascertained but at least $174,362.78 and according to proof at trial; and

2.      For interest on all sums at the maximum legal rates allowed by law from dates according to proof.

ON THE FOURTH CLAIM FOR RELIEF:

1.      For general, special and consequential damages in an amount not yet fully ascertained but at least $174,362.78 and according to proof at trial;

2.      For interest on all sums at the maximum legal rates allowed by law from dates according to proof; and

3.      For punitive damages.

ON ALL CAUSES OF ACTION:

1.      For costs of suit incurred herein; and

2.      For such other and further relief the Court deems just and proper.

DATE:  August 3, 2018                          Respectfully submitted,

                                                                FINCH, THORNTON & BAIRD, LLP


By: */s/ Jon F. Gauthier*
        DUSTIN R. JONES
        JON F. GAUTHIER
        THOMAS F. FEERICK JR.
        Attorneys for Plaintiff Willkom, Inc.

2544.002/3DI6873.kam

FINCH, THORNTON &
BAIRD, LLP
4747 Executive
Drive - Suite 700
San Diego, CA 92121
(858) 737-3100

COMPLAINT

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
Willkom, Inc.

## DEFENDANTS
West Point Contractors, Inc., et al.

**(b)** County of Residence of First Listed Plaintiff    San Diego
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:    IN LAND CONDEMNATION CASES, USE THE LOCATION OF
THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Dustin R. Jones; Jon F. Gauthier; Thomas F. Feerick, Jr.
Finch, Thornton & Baird, LLP
4747 Executive Drive, Suite 700 San Diego, California 92101
Telephone: (858) 737-3100

Attorneys *(If Known)*

'18CV1813 AJB MDD

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

| | | | |
|---|---|---|---|
| ☐ | 1 U.S. Government Plaintiff | ☒ | 3 Federal Question *(U.S. Government Not a Party)* |
| ☐ | 2 U.S. Government Defendant | ☐ | 4 Diversity *(Indicate Citizenship of Parties in Item III)* |

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*                                *and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*
Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☒ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical Personal Injury | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | **LABOR** | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 720 Labor/Management Relations | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☐ 160 Stockholders' Suits | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 190 Other Contract | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | | | ☐ 790 Other Labor Litigation | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | | ☐ 791 Employee Retirement Income Security Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| | | | | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information Act |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 896 Arbitration |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | **IMMIGRATION** | | |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | ☐ 462 Naturalization Application | | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities- Employment | ☐ 535 Death Penalty | ☐ 465 Other Immigration Actions | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities- Other | **Other:** | | | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

| | | | | | | |
|---|---|---|---|---|---|---|
| ☒ 1 Original Proceeding | ☐ 2 Removed from State Court | ☐ 3 Remanded from Appellate Court | ☐ 4 Reinstated or Reopened | ☐ 5 Transferred from Another District *(specify)* | ☐ 6 Multidistrict Litigation- Transfer | ☐ 8 Multidistrict Litigation - Direct File |

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:

Brief description of cause:

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
**JURY DEMAND:**    ☐ Yes  ☐ No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*
JUDGE                                                    DOCKET NUMBER

DATE    August 3, 2018

SIGNATURE OF ATTORNEY OF RECORD  /s/ Jon G. Gauthier, Esq.

**FOR OFFICE USE ONLY**

RECEIPT #              AMOUNT              APPLYING IFP              JUDGE              MAG. JUDGE

American LegalNet, Inc.
www.FormsWorkFlow.com

## INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

**I.(a)**    **Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

**(b)**    **County of Residence.** For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

**(c)**    **Attorneys.** Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.**    **Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.
United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.
United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.
Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.
Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; **NOTE: federal question actions take precedence over diversity cases.**)

**III.**    **Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

**IV.**    **Nature of Suit.** Place an "X" in the appropriate box. If there are multiple nature of suit codes associated with the case, pick the nature of suit code that is most applicable. Click here for: Nature of Suit Code Descriptions.

**V.**    **Origin.** Place an "X" in one of the seven boxes.
Original Proceedings. (1) Cases which originate in the United States district courts.
Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441. When the petition for removal is granted, check this box.
Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.
Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.
Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.
Multidistrict Litigation – Transfer. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407.
Multidistrict Litigation – Direct File. (8) Check this box when a multidistrict case is filed in the same district as the Master MDL docket.
**PLEASE NOTE THAT THERE IS NOT AN ORIGIN CODE 7.** Origin Code 7 was used for historical records and is no longer relevant due to changes in statue.

**VI.**    **Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.** Example: U.S. Civil Statute: 47 USC 553 Brief Description: Unauthorized reception of cable service

**VII.**    **Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.
Demand. In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.
Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.**    **Related Cases.** This section of the JS 44 is used to reference related pending cases, if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.


American LegalNet, Inc.
www.FormsWorkFlow.com

# EXHIBIT 1

 **WEST POINT** CONTRACTORS, INC.

Job No.  N62473-17-D-1411-002

Subcontract No.  2017-008-NAVFAC-002-001

### SUBCONTRACT

**THIS SUBCONTRACT** (hereafter "Subcontract"), is made and entered into this 9/25/17 by and between West Point Contractors, Inc. Company, an Arizona corporation (authorized to do business in the state in which the Project (as defined below) is located (hereafter "Contractor") and

Willkom Inc

12525 Southport Way #B

National City, CA 91950

(Hereafter "Subcontractor").

The Contractor has entered into a contract with NAVFAC (hereafter "Client") for the performance of certain work more particularly described in such contract (hereafter "Contract") for work on the project (described below). The Contract includes but is not limited to, documents incorporated by reference or otherwise attached to the Contract, which may include the general, supplementary, special and other terms and conditions and the addenda, plans, drawings, maps and other documents. The Contract is expressly incorporated herein as a part of the Subcontract Documents (as defined in Article 1.1). The project (hereafter "Project") is generally described as follows:

### NAVFAC Task Order 2 Building 61 Roof Repairs

Contractor and Subcontractor desire to enter into this Subcontract whereby Subcontractor shall undertake the performance of a part of the work to be performed by Contractor under the Contract.

**NOW, THEREFORE,** in consideration of the mutual promises and conditions herein contained, Contractor and Subcontractor agree as follows:

**1.0 SUBCONTRACT DOCUMENTS: 1.1** The Subcontract Documents shall consist of this Subcontract, all attachments to this Subcontract, all documents referenced or identified in the Subcontract and attachments to this Subcontract, and the Contract. These form the Subcontract and are as fully a part of the Subcontract as if attached to or repeated here. The Subcontract Documents not physically attached to the Subcontract will be provided to Subcontractor upon the written request of Subcontractor or Subcontractor may review them in Contractor's office during normal business hours.

1.2 Subcontractor shall be bound and obligated to Contractor by the terms and conditions of the Subcontract and the Subcontract Documents. Subcontractor assumes toward Contractor all obligations, liabilities and responsibilities that Contractor, by the Contract, has assumed toward Client as it applies to Subcontractor and/or the work of Subcontractor. Contractor shall further have the benefit of all rights, remedies, redress and limitations in respect to Subcontractor and all things done and used by Subcontractor in performance of its Work (as defined in Article 2.0) which Client and its agents have against Contractor under the Contract or by Law (as defined in Article 9.0). Any and all decisions or interpretations by Client or its agents relative to interpretation of the Contract or any ambiguity or discrepancy therein as it applies to the Work shall be binding on the Subcontractor to the same extent such decisions or interpretations are binding on Contractor.

1.3 The intent of the Subcontract Documents is to include all items necessary for the proper execution and completion of the Work (as defined in Article 2.0). The Subcontract Documents are complementary, and what is required by any one shall be as binding as if required by all with respect to the Work. Work not explicitly covered in the Subcontract Documents shall be performed by Subcontractor so long as it is consistent with and is reasonably inferable from the Subcontract Documents and shall be considered included in the Subcontract Price (as defined in Article 3.0). The Contract and this Subcontract shall be interpreted together and in harmony with one another. In the event of conflict between the Contract and the Subcontract, the Contract shall be controlling except with respect to the independent relationship between Contractor and Subcontractor, which shall be governed by the Subcontract.

1.4 Subcontractor hereby represents and acknowledges that it has reviewed and inspected all of the Subcontract Documents and has compared all such documents directly or indirectly relating to the performance of this Subcontract. Any and all errors, ambiguities and inconsistencies therein have been reported to the Contractor in writing and resolved to Subcontractor's satisfaction.

**2.0 WORK TO BE PERFORMED: 2.1** Subcontractor, for the Subcontract Price (as defined in Article 3.0), shall furnish all supervision and labor, and furnish, supply and install all equipment, materials, and supplies and do all things necessary to fully, timely and properly perform and complete that portion of the work provided for in the Contract as identified in Attachment A.1 (hereafter "Work").

Initial _CW_

2.2 Subcontractor warrants to Contractor and Client that all Work shall be performed in a neat, skillful, good and workmanlike manner and shall be fit for its intended use both as to workmanship and materials.   All materials and equipment furnished by Subcontractor for incorporation into the Project shall be new and of the best description and quality of their respective kinds, unless otherwise specified and ordered by Contractor in writing. Subcontractor warrants that the materials and equipment furnished and the Work performed will strictly comply with the Contract and this Subcontract.  Subcontractor acknowledges that Subcontractor's performance of the Work is subject to the approval and acceptance of Client to the extent required by the Contract and shall be reasonably satisfactory to Contractor.

**3.0 PAYMENT:**   Unless otherwise provided by Law or by the Subcontract Documents, within seven (7) business days after the date Contractor receives a progress payment from Client covering the amount of Work performed by Subcontractor, Contractor will pay to Subcontractor the amount due Subcontractor as estimated by Client (or Contractor, if Client makes no separate estimate of such Work, and approved by Client) for the period covered by the application for payment, less such amounts as Contractor shall determine as being properly withheld as allowed under this Subcontract. Subcontractor agrees that the monies received for the performance or this Subcontract shall be used only for such work and that Subcontractor shall furnish proof of the foregoing upon written request of the Contractor.

**4.0 PAYMENT OF CHARGES AND TAXES:** The Subcontract Price includes, and Subcontractor shall promptly pay or cause to be paid, all costs, expenses, and other obligations incurred by, through or under Subcontractor related to the Project on the Work, including the cost of its sub-subcontractors of any tier or the suppliers to any of them and all taxes, including sales or use taxes, assessment fees and charges, unemployment insurance, old age benefits, pensions or annuities imposed or required by any government or labor agreement to which Contractor is a party, and all other costs, expenses and obligations levied, incurred or payable on or in respect to Subcontractor's acts or transactions or things used by it in performing such obligations.

**5.0 PROGRESS AND FINAL PAYMENTS:**   5.1 Subcontractor, upon the request of Contractor, shall, prior to Subcontractor's first application for payment, submit to Contractor a schedule of values allocated to the various portions of the Work.  The schedule of values shall reflect an accurate apportionment of the cost to perform the respective portions of the Work and shall be subject to the approval of Contractor and shall be in such form and supported by such data as Contractor may reasonably require. Subject to Section 5.3, the schedule of values shall be used for the evaluation of Subcontractor's application for payment.

5.2 Subcontractor, upon the request of Contractor, and on such date as Contractor shall designate, shall submit to Contractor, in form and content acceptable to Contractor, an itemized application for payment.  The application for payment shall be notarized if required by Contractor and supported by such data substantiating Subcontractor's right to payment as Contractor may reasonably require.  If Subcontractor fails to timely submit its application for payment in form and content satisfactory to Contractor, a progress payment may not be included in Contractor's application for payment to Client.

5.3 Unless otherwise provided by Law (as defined in Article 9.0) or by the Subcontract Documents, within seven (7) business days after the date Contractor receives a progress payment from Client covering the amount of Work performed by Subcontractor, Contractor will pay to Subcontractor the amount due Subcontractor as estimated by Client (or Contractor, if Client makes no separate estimate of such Work, and approved by Client) for the period covered by the application for payment, less such amounts as Contractor shall determine as being properly withheld as allowed under this Subcontract.  Subcontractor shall make payment to each of its subcontractors and suppliers amounts due them in the same manner and within the same time period as set forth above.  To the fullest extent allowed by Law, Contractor will retain and withhold the amount of such reduction that shall be released to Subcontractor only upon satisfaction of the requirements set forth in Section 5.6.  Any sums that Contractor may receive from Client by reason of depositing security with Client shall be excluded in computing the payments to Subcontractor.  The estimates of Client as to the amount of Work performed by Subcontractor (or Contractor if Client makes no separate estimate of such Work) shall be binding upon Subcontractor and shall conclusively establish the amount of Work performed by Subcontractor.

5.4 As a condition precedent to receiving payments from Contractor for Work performed, Subcontractor (and, if required by Contractor, each of Subcontractor's subcontractors of any tier, the suppliers to any of them, and any other person or entity who has performed (or claims to have performed) a portion of the Work or a trust fund to which an employer is required to submit funds pursuant to an applicable employment agreement or a collective bargaining agreement (collectively "Interest Claimants" and individually "Interest Claimant")) shall execute and deliver to Contractor, with its application for payment, a full and complete release of all claims and causes of action Subcontractor and such Interest Claimants, or any of them, may have (or claim to have) against Contractor, Client or the Project itself through the date of the execution of said release, save and except those claims specifically listed on said release and described in a manner sufficient for Contractor to identify such claim or claims with certainty.  The release shall conform to the requirements of any applicable statute.

5.5 As a condition precedent to Contractor's obligation to make payments to Subcontractor for Work performed, Subcontractor shall have properly executed and delivered to Contractor this Subcontract and all documents and information to be furnished by Subcontractor as required by the Subcontract Documents including the Certificate of Insurance and endorsements required under Article 10.0 and, if requested by Client or Contractor, the certification required under Section 9.2.

5.6 Upon complete and satisfactory performance of this Subcontract by Subcontractor and final approval and acceptance of the Work by

Initial 

Client, Contractor will make final payment to Subcontractor of the balance due under this Subcontract in such time as prescribed by Law or the Subcontract Documents provided, however, that Subcontractor, following the request of Contractor, has timely furnished to Contractor (1) an affidavit that all payrolls, taxes, bills for material and equipment and other indebtedness connected with the Work for which Client or his property or Contractor might in any way be responsible, have been paid or otherwise satisfied; (2) consent of surety, if any, to final payment; (3) other data establishing payment or satisfaction of all such obligations to the extent and in such form as may be required by Client and/or Contractor; (4) fully executed waivers and/or release of (i) liens, (ii) notices to withhold or (iii) other claims against the land, improvements, or funds involved in the Project from Subcontractor and from Interest Claimants in form satisfactory to Contractor or required by statute, as appropriate; and (5) all other documents required by the Subcontract Documents as a condition to final payment. If any Interest Claimant or other person or entity refuses to furnish a release or waiver of any other document or data required by Client or Contractor or as otherwise required under this Section 5.6, the Subcontractor shall, upon the request of Contractor, furnish security of a nature and in form and amount required by Contractor including a bond in an amount prescribed by statute (or if not prescribed by statute in an amount as reasonably determined by Contractor) and form reasonably satisfactory to Client and/or Contractor which security shall be sufficient to indemnify Client and Contractor against any such claim or lien. Should the existence of any unsatisfied or undischarged claim, obligation or lien arising in conjunction with Subcontractor's Work become known after final payment is received from Contractor, Subcontractor shall promptly pay on demand all actual amounts Contractor and/or Client pay in putting in place and maintaining a release conforming to statutory requirements if applicable, satisfying, discharging or defending any such claim, obligation or lien, including all costs and actual attorney's fees incurred in connection therewith.

5.7 Contractor may withhold from Subcontractor payments otherwise due, in whole or in part, or may nullify, in whole or in part, any approval previously made by Contractor on account of defective materials or defective Work not remedied; claims filed or reasonable evidence indicating probability of filing of claims (including a claim of lien or stop notice) by an Interest Claimant; failure of Subcontractor to timely make the required payments to its subcontractors or for material, supplies or labor or to union trust funds or governmental agencies owed taxes; a reasonable doubt that the Subcontract can be completed for the balance then unpaid; a reasonable belief that the Work will not be completed in accordance with the Work Progress Schedule (as defined in Article 8.0); incomplete or non-conforming application for payment (if required); Subcontractor's failure to carry out or perform the Work in accordance with the Subcontract Documents; or any other reason set forth in the Subcontract Documents pertaining to Client's withholding of payments to Contractor. If the foregoing causes are promptly removed or corrected to Contractor's satisfaction, the withheld payments shall be made. If such causes are not promptly removed or corrected, Contractor may rectify the same at Subcontractor's expense including reimbursement of Contractor's actual attorney fees and costs incurred and the cost of procuring a release bond necessary to remove the effect of a claim of lien or stop notice where a lien or stop notice has been filed. No certificates issued or payment made to Subcontractor shall be considered an acceptance of any Work, whether or not defective or improper. Should any claim against Contractor arise after final payment is made, all provisions of Article 11.0 shall apply and be binding on Contractor and Subcontractor.

5.8 Subcontractor grants to Contractor the right of set off of sums due to Subcontractor under the provisions of this Subcontract against any obligation that may be due from Subcontractor or its affiliates to Contractor regardless of the source of said obligation. Subcontractor, upon the request of Contractor, shall furnish an affidavit showing the names and addresses of all governmental agencies owed taxes or persons or companies that will or have furnished labor, materials, equipment or services for the Work and the amount due or to become due to each such person or company. No portion of the Subcontract Price otherwise payable or to be paid to Subcontractor shall be considered actually earned by Subcontractor until all such persons or companies are fully paid by Subcontractor in accordance with applicable Subcontract terms and conditions.

5.9 To the fullest extent permitted by Law, Contractor shall have no obligation to pay Subcontractor for any Work performed under this Subcontract until Contractor has been paid for such Work by Client and such payment by Client is hereby deemed to be an express condition precedent to any obligation owing by Contractor to Subcontractor to pay for any Work, including changed and extra Work performed by Subcontractor under this Subcontract.

5.10 Subcontractor agrees and covenants that money received for the performance of this Subcontract shall be held in trust and used solely for the benefit of employees of Subcontractor and firms supplying labor, materials, supplies, tools, machines, equipment, plant or services for this project in connection with this Subcontract and having the right to assert liens or other claims against the land, improvements or funds involved in this Project or against any bond or other security posted by Contractor or Client.

5.11 Subcontractor warrants that title to all Work, materials and equipment covered by an application for payment will pass to Client, free and clear of all liens, claims, security interests or encumbrances upon the first to occur of (i) incorporation into the Project or (ii) upon the receipt of payment therefore by Subcontractor and that no Work, materials or equipment covered by any application for payment will have been acquired by the Subcontractor, or by any other person performing the Work at the site or furnishing materials and equipment for the Project, subject to an agreement under which an interest or an encumbrance is retained by the seller or otherwise imposed by the Subcontractor or such other person.

5.12 To the extent permitted by Law, payments may, in the discretion of Contractor, be made in the form of checks payable jointly to Subcontractor and any sub-subcontractor, supplier or person performing labor or services for Subcontractor or any person who has a right of action (or claims to have a right of action) under applicable Law (as defined in Article 9.0) against Contractor or its surety; or who has the right to file, record and foreclose a mechanics' lien (or who claims to have such right). Subcontractor shall immediately pay

Initial _OW_

Claimants all amounts they are due upon receipt of payment from Contractor. If Subcontractor shall fail to timely pay when due an Interest Claimant for any taxes, materials, labor and services furnished in connection with the performance of the Work, Contractor may pay in its sole discretion (but without obligation to do so) the amount of such taxes, labor, services and/or materials directly to the entity or person providing the same or the governmental agency to whom taxes are due. The amount paid by Contractor shall be deducted from payments otherwise due, or to become due, Subcontractor. Such payments shall be deemed payments made by Contractor to Subcontractor and the Subcontractor shall have no recourse against Contractor for payments made by Contractor hereunder.

5.13 Subcontractor shall not be entitled to any interest on retention or other amounts to be paid to Subcontractor under the terms of this Subcontract except where the payment of interest is required by statute and the right to such interest cannot be waived or where Contractor receives interest from Client on proceeds due Subcontractor for Work performed.

**6.0 WORK AND JOBSITE CONDITIONS:** Subcontractor warrants and represents that it has inspected and familiarized itself with the site of its Work and the conditions affecting the Work including those bearing on transportation, disposal, handling and storage of materials, availability of labor, utilities, roads and uncertainties of weather, river stages, tides or other physical conditions of the site and the type of equipment and facilities needed preliminary to and during the performance of the Work. Subcontractor has satisfied itself as to the surface and subsurface conditions of the site from inspection of the site, all exploratory work done by Client and/or Contractor, as well as from information presented in the Subcontract Documents. Any failure by Subcontractor to acquaint itself with such available information that results in Subcontractor reaching erroneous conclusions or misinterpretations shall preclude Subcontractor from being entitled to a change in Subcontract Price or Time Extension (as defined in Article 14.0). Subcontractor shall be entitled to an equitable proportionate share of any compensation Contractor receives from Client for changed or differing site conditions which impact Subcontractor's performance of the Work but only to the extent received by Contractor.

**7.0 INDEPENDENT CONTRACTOR:** Subcontractor represents and warrants that it is an independent contractor and shall operate as an independent contractor and not as an agent of Contractor. Subcontractor shall not represent or hold itself out to be an agent of Contractor. This Subcontract does not create, nor does any course of conduct between Contractor and Subcontractor with respect to this Subcontract create, any contractual relationship between any parties other than as Contractor and Subcontractor. Subcontractor represents and warrants that it (i) is fully experienced and properly qualified to perform the class of Work provided for herein, (ii) has the financial capability and shall finance its own operations required for the performance of the Work and (iii) is properly equipped and organized to perform the Work in a competent, timely and proper manner in accordance with the requirements of the Subcontract Documents. Subcontractor rep resents and warrants that its entry into this Subcontract has not been induced either wholly or in part by any promises, representations or statements by Contractor or its agents or representatives other than those representations set forth in this Subcontract and that this Subcontract fully integrates the intentions of Contractor and Subcontractor. Subcontractor represents and warrants that is not presently disbarred, suspended, proposed for debarment, or declared ineligible for the award of contracts by any federal or other public agency.

**8.0 COMMENCEMENT AND PROGRESS OF WORK: 8.1** Time is of the essence in the performance by Subcontractor of its obligation under this Subcontract. Subcontractor shall initiate the Work and shall thereafter proceed and complete performance of the Work promptly and diligently all in accordance with the Work Progress Schedule (as defined in Section 8.3). The work shall be performed in such a manner and sequence as to assure the timely completion of other work dependent on the Work and to permit completion of the Work as required by the Work Progress Schedule (as defined in Section 8.3). The timely performance of the Work in accordance with the Work Progress Schedule (as defined in Section 8.3) is a material provision of the Subcontract.

8.2 Except as otherwise directed by Contractor, Subcontractor shall, within five (5) business days after its execution of this Subcontract, or within such other time as may be specified by Contractor, prepare and submit to Contractor in writing for Contractor's review and approval a proposed schedule, showing in detail (i) the number of days required by Subcontractor to complete the Work; (ii) the order in which Subcontractor proposes to carry out all major activities (including the sequence and anticipated duration of such activities) anticipated by Subcontractor and (iii) the dates on which the activities representing the complete performance of the Work (including procurement of materials, plant and equipment) may be started and finished ("Proposed Schedule"). Where Contractor has made available to Subcontractor a schedule for the Project as approved by Client ("Client's Schedule"), Subcontractor shall schedule and sequence its Work such that it is integrated into and consistent with the Client's Schedule.

8.3 Provided Contractor has timely received the Subcontractor's Proposed Schedule for performance of the Work (if required), Contractor shall prepare the work progress schedule incorporating Subcontractor's Proposed Schedule to the extent reasonably feasible and consistent with the Client's Schedule (as integrated "the Work Progress Schedule"). Should any aspect of the Work Progress Schedule be at variance with the Subcontractor's Proposed Schedule or desired sequencing or duration of its Work, Subcontractor shall notify Contractor in writing of such variation within five (5) business days of its receipt of the Work Progress Schedule. Thereafter, the parties shall meet in a good faith effort to resolve any scheduling differences. However, Subcontractor shall abide by a final determination made by Contractor, in Contractor's sole discretion, with respect to the scheduling of the Work including the sequencing and duration of the Work. Subcontractor's failure to submit its Proposed Schedule, if and when required, or to notify Contractor in writing of any variation or conflict between Subcontractor's Proposed Schedule and the Work Progress Schedule shall bar Subcontractor from claiming either extensions of the time and/or activity completion dates specified in the Work Progress Schedule or an increase in the Subcontract Price attributable to delay or acceleration if the basis for requesting such extension of time or increase in Subcontract Price is Subcontractor's inability to comply with the Work Progress Schedule.

Initial _____

8.4 Subcontractor further acknowledges that, as construction progresses, it may be necessary for Contractor to change the sequential order and duration of various activities, including those contemplated by the Subcontract to reflect unanticipated delays, occurrences and other factors which act to alter the Work Progress Schedule. Contractor may require Subcontractor to prosecute the Work in such sequence as Contractor may reasonably require in order to maintain the progress of others and of the Work Progress Schedule. Contractor may, from time to time, revise and update the Work Progress Schedule so as to reflect the actual progress of the Work and/or changes in the Work. Subcontractor shall coordinate its Work with that of Contractor and others as Contractor may reasonably require. Subcontractor in the reasonable opinion of Contractor, shall at all times furnish and have available such sufficient and satisfactory equipment, materials, supplies and labor to perform the Work to meet the Work Progress Schedule. In the event Subcontractor fails to perform the Work in accordance with the Work Progress Schedule or, in order to avoid falling behind the Work Progress Schedule, to the extent such failure is not the result of a delay for which Subcontractor is entitled to an extension of time in which to perform the Work under this Article 8.0, Subcontractor, at its own expense, shall promptly provide additional equipment and/or labor and work additional shifts or overtime so as to meet and maintain the Work Progress Schedule. Subcontractor shall be responsible for all expenses and damages incurred by Contractor resulting from the failure of the Subcontractor to meet the Work Progress Schedule.

8.5 If Subcontractor shall be delayed in the performance of the Work by any act or neglect of Client, its agents (including consultants, architect, engineer or other design professional) or by changes ordered by Client in the Work, or by fire, unavoidable casualties, national emergency, adverse weather conditions not reasonably anticipatable, strikes, lockouts, acts of God or war or for reasons beyond Subcontractor's control and without Subcontractor's fault or negligence, Subcontractor shall be entitled to claim, as Subcontractor's exclusive remedy, to an extension of time reasonably necessary to compensate for the time lost due to the delay, but only if Subcontractor shall have notified Contractor in writing of the existence of the delay within two (2) business days of the occurrence of the event giving rise to the delay, and, only to the extent that an equivalent extension of time is granted to Contractor by Client for delays incurred by Subcontractor. Provided, however, that Contractor shall compensate Subcontractor but only to the extent that Contractor receives an adjustment in the contract price from Client for additional costs incurred by Subcontractor due to delays, interferences, hindrances, inefficiencies or disruptions resulting from Client's interference with Subcontractor's Work. Subcontractor shall have the burden of proving the impact of the delay and justifying the time extension requested. If the performance of the Work by Subcontractor is unaffected by a delay incurred by Contractor or another subcontractor and for which relief is granted to Contractor or such other subcontractor, Subcontractor shall not be entitled to claim an extension of time for such delay as a justification for delay in the timely performance of its Work.

**9.0 LAWS AND REGULATIONS:** 9.1 Subcontractor, its employees and representatives shall at all times comply with all applicable laws, ordinances, statutes, rules and regulations, federal, state, county and municipal, and rulings or directives of any agencies having jurisdiction including those relating to the environment, wages (including, if required, the payment of prevailing wages and/or the timely submission of certified payrolls), hours, safety, equal employment opportunity and working conditions or which pertain in any way to the scope of work to be performed by Subcontractor (herein "Laws" or "Law"). Subcontractor represents and warrants that it holds all required licenses required by Law and necessary for Subcontractor to perform the Work. Subcontractor shall procure and pay for all licenses, inspections and permits required by any governmental authority or any Law for any part of the Work.

9.2 If Subcontractor claims status as a disadvantaged business enterprise, including, without limitation, a minority business enterprise, veteran or service disabled veteran business enterprise, women's business enterprise, disabled persons business enterprise or any other specialized status recognized by applicable Law, then upon the request of Client and/or Contractor, Subcontractor shall provide certification or other proof of such status (including confirmation of the current status claimed) within two (2) business days of such request. The certification or such other proof of status shall be in such form and content as required by Client and/or Contractor. If Subcontractor claims such status but such status is subsequently denied or revoked by any agency or entity having authority to do so, then Subcontractor shall immediately provide written notice to Contractor of such loss of status together with the written determination of such agency or entity communicated to Subcontractor.

9.3 All Work shall conform to the workmanship standards of the Arizona Registrar of Contractors (A.A.C. § R4-9-108).

**10.0 INSURANCE:** 10.1 Upon execution of this Subcontract and, in any event, before commencing the Work, Subcontractor shall procure, and maintain in full force and effect at Subcontractor's expense, so long as may be necessary to fully protect Client and Contractor and, in any event, at least through the end of the warranty period, including any special warranties, applicable to the Work, Workers' Compensation Insurance in accordance with the laws of the state in which the Work is situated; and Employers' Liability Insurance; Commercial General Liability Insurance on an occurrence basis only including products, completed operations, contractual liability, broad form property damage, coverage for explosion, collapse, underground damages, and contractors' protective liability insurance; Comprehensive Automobile Liability Insurance on an "Any Auto" basis covering any and all owned, non-owned and hired automobiles used in connection with the Work and such other coverage and in the minimum limits as specified in Appendix D. If higher limits or other forms of insurance are required under the Contract, Subcontractor will comply with such requirements.

10.1.1 If the Subcontractor's scope of work includes professional services, including design or engineering, the design professional shall procure and maintain Professional Errors and Omissions coverage written on a standard industry policy with minimum limits stated in Attachment A.3. The policy shall be subject to the approval of Contractor. Upon the request of Contractor, Subcontractor shall produce such policy for Contractor's review.

Initial 

10.2 Before Contractor will execute Subcontract, the Subcontractor shall furnish a certificate, satisfactory to Contractor, from each insurance company providing coverage to Subcontractor showing that said insurance coverage is in force, stating policy numbers, dates of expiration, deductible amounts applicable to each policy, and limits of liability thereunder, and further providing that the insurance will not be canceled, modified or changed until the expiration of at least thirty (30) calendar days after written notice of such cancellation, modification or change has been mailed by certified mail return receipt requested to Contractor.  Subcontractor shall be responsible for all deductible amounts applicable to each policy.

10.3 The general liability insurance policy and any excess policies shall be endorsed to stipulate that the insurance afforded the additional insureds (as identified in the next sentence), including completed operations, shall apply per project as primary insurance without qualification and that any other insurance maintained by Client and Contractor shall be in excess only and shall not be called upon to contribute with the insurance of Subcontractor. Contractor, Client and their directors, officers, employees and agents and such other persons or entities as Contractor may require or is required, under the Contract Documents of Contractor by Client, shall be named, by endorsement (using a form of endorsement approved by Contractor), as additional insureds on Subcontractor's general liability insurance policy and its automobile liability insurance policy, and a vicarious liability endorsement on Subcontractor's professional liability insurance policy (if Subcontractor's scope of work includes professional services, including design or engineering), in accordance with the requirements of Appendix D. This insurance and endorsements shall remain in force until the statue of repose expires in the state that has jurisdiction.

10.4 Subcontractor's insurance shall apply separately to each insured against whom claim is made or suit is brought, except with respect to the limits of the insurer's liability.

10.5 Subcontractor for itself and on behalf of its insurers hereby waives and releases the additional insureds from liability for loss, damage or loss of property at the job site, which loss is covered by said insurance. Subcontractor shall obtain a waiver of any subrogation right that its insurers may acquire against any of the additional insureds by virtue of payment of any such loss covered by such insurance.

10.6 If Subcontractor's existing coverage does not meet the requirements set forth herein, Subcontractor agrees to amend, supplement, or endorse the existing coverage to do so at no additional cost to Contractor. Compliance in full with the insurance requirements stated in this Article 10, are understood to be a condition precedent to Contractor's obligations under this Subcontract.

10.7 The Subcontractor shall be responsible for determining the adequacy of insurance coverage requested, or put in place by others, with respect to the Work to be completed under this agreement. The Subcontractor shall, at its own expense, purchase any additional insurance which is required by law or which it considers necessary to protect itself against liability or damage, loss or expense arising from damage to property or injury or death of any persons arising in any way out of, in conjunction with, or resulting from performance of the Work.

10.8 It is understood and agreed that authorization is hereby granted to the Contractor to withhold payments to the Subcontractor until a current and properly executed Certificate of Insurance providing insurance as required herein is received by the Contractor.

11.0 LIABILITY FOR INJURY AND DAMAGES:  11.1 To the fullest extent permitted by Law, Subcontractor shall indemnify, defend (with counsel reasonably satisfactory to Contractor), and save harmless Client and Contractor, as well as any individual and/or entity that Contractor is required by contract to indemnify, defend and/or hold harmless, and their officers, directors, agents and employees, and each of them, (hereafter collectively "Indemnified Parties" and individually "Indemnified Party") from and against any and all suits, actions, legal or administrative proceedings, claims, debts, demands, damages, consequential damages, liabilities, interest, actual attorney's fees, costs and expenses of whatever kind or nature (hereafter "Claim" or "Claims") and whether they may arise before, during or after performance of Subcontractor's Work which are in any manner directly or indirectly caused, occasioned or contributed to, in whole or in part, or claimed to be caused, occasioned, or contributed to, in whole or in part, through any act, omission, fault or negligence whether active or passive of Subcontractor, or anyone acting under its direction, control, or on its behalf  or for which it is legally responsible, in connection with or incident to the Work or arising out of any failure of Subcontractor to perform any of the terms and conditions of this Subcontract; without limiting the generality of the foregoing, the same shall include injury or death to any person or persons (including Subcontractor's employees) and damage to any property, regardless of where located, including the property of Client and Contractor.  Subcontractor's obligation to provide a defense for an Indemnified Party shall arise regardless of the merits of the matter and shall continue until a final determination of fault is made.  Subcontractor's obligation to indemnify, defend and hold harmless an Indemnified Party shall apply regardless of any allegations of active and/or passive negligent acts or omissions of an Indemnified Party.  Subcontractor, however, shall be relieved of and shall have no further obligation to indemnify an Indemnified Party under the Subcontract Documents to the extent that a Claim is finally determined by a tribunal having jurisdiction that a Claim is due to the sole negligence or willful misconduct of that Indemnified Party or such party's agents or employees.  Contractor shall be entitled to recover actual attorney fees and court costs and all other costs, expenses and liabilities incurred by Contractor in an action brought to enforce all or any part of this Article 11.0.

11.2 To the fullest extent permitted by Law, Subcontractor shall indemnify and defend and save harmless the Indemnified Parties, and each


Initial _____

of them, from and against all claims, royalties, damages, liabilities, costs and expenses of whatever kind or nature (including actual attorney's fees) in any manner resulting, or claimed to result from any alleged infringement of any letters patent or patent rights by reason of the Work or materials or processes used by Subcontractor, its lower tier subcontractors and/or suppliers or others acting on its behalf, in the performance of the Work.

11.3 The indemnification provisions of Articles 11.0, 12.0 and 25.0 shall survive termination of this Subcontract and shall extend to claims occurring after termination of this Subcontract as well as while it is in force.

11.4 The obligations for indemnification herein required are severable.   The unenforceability of any portion of the obligation for indemnification hereunder due to the effect of any Law, court decision, or any other reason, shall not nullify, reduce or limit other obligations set forth herein.  All other obligations arising under this Article 11.0 shall remain in full force and effect.

11.5 The insurance obligations of the Subcontractor are separate, independent obligations under the Subcontract Documents, and the provisions for defense and indemnity contained in Articles 11.0, 12.0, and 25.0 are not intended to modify, nor should they be construed as modifying or in any way limiting, the insurance obligations set forth in the Subcontract Documents.

**12.0 DELAY DAMAGES:**  In the event any acts or omissions by or of Subcontractor delay Contractor in the performance of the Contract and result in Contractor being subjected to any damage or liability under the Contract, Subcontractor agrees to indemnify, defend and save and hold Contractor harmless against any damage or liability for and to promptly pay to Contractor any damage or liability so incurred (including liquidated or actual damages) and such other or additional damages, costs, assessments and expenses including actual attorneys' fees, as Contractor may sustain by reason of Subcontractor's delay or failure to perform.

**13.0 ASSIGNMENT:**  13.1 Subcontractor shall not assign, sublet, subcontract or hypothecate this Subcontract or any of the Work or any amount due or payable hereunder without the prior written consent of Contractor.   Any assignment, subletting, subcontracting or hypothecating of this Subcontract without such consent shall be void.

13.2 Contractor has the right to assign this Subcontract to Client (or if Client is not the owner of the Project, to the entity designated by Client) consistent with the terms and conditions of the Contract.  Subcontractor hereby agrees to accept such an assignment under the terms and conditions set forth in the Contract.

**14.0 CHANGES AND EXTRA WORK:**  14.1 Without invalidating this Subcontract and without notice to any surety, Contractor may, at any time or from time to time, order additions, deletions or revisions in the Work to be performed and/or the Work Progress Schedule ("Change" or Changes").   Such changes may include any kind of addition, deletion, or modification of scope, for any purpose, and regardless whether added work changes the existing design or adds an entirely new element to the Work.  Under no conditions shall Subcontractor make any changes either as additions or deductions without the written order of Contractor ("Change Order").

14.2 All Changes directed by Contractor but which originate with or are requested by Client will be compensated for by Contractor but only to the extent a commensurate adjustment in compensation or time is allowed Contractor by Client for the labor, materials, equipment and Mark-up (as defined in Section 14.5) for Subcontractor performing the Change and any impact that Change has on the Work.

14.3 All Changes directed by Contractor but which do not originate with or are not requested by Client will be compensated for by Contractor as mutually agreed in writing by Subcontractor and Contractor but in no event greater than Subcontractor's actual costs, plus Mark-up (as defined in Section 14.5) for performing the Change and any impact that Change has on the Work plus Mark-up (as defined in Section 14.5).

14.4 In the event Subcontractor encounters any condition or event (other than a condition or event described in Section 8.5 or a condition or event caused solely by Contractor) during the performance of the Work that Subcontractor believes entitles it to an adjustment in the Subcontract Price and/or the Work Progress Schedule (a "Site Condition"), Subcontractor shall, before such Site Condition is disturbed, give written notice to Contractor of such Site Condition.  The written notice shall be given to Contractor sufficiently in advance of the time Contractor is required to submit a claim, potential claim and notice of claim ("Potential Claim") to Client in accordance with the Contract so as to allow Contractor adequate time to understand and familiarize itself with the Site Condition, the impact that the Site Condition has or may have on Contractor and others, and the opportunity to prepare and timely submit to Client a Potential Claim on behalf of Subcontractor.  The written notice shall have adequate information to enable Contractor to submit a Potential Claim on behalf of Subcontractor that is in strict accordance with the Contract.  In no event, however, shall such written notice be given to Contractor more than two (2) business days after Subcontractor encounters the Site Condition.  The timely delivery of an adequate written notice shall be an express condition precedent to the Subcontractor's right to an adjustment in the Subcontract Price and/or Work Progress Schedule because of such Site Condition.  In the event Contractor is allowed an adjustment in compensation and/or a time extension by Client as a result of a Site Condition for which Subcontractor provided a timely and adequate written notice, then Subcontractor shall be entitled to an adjustment in compensation to the extent a commensurate adjustment in compensation or time is allowed Contractor by Client for costs incurred by the Subcontractor that were caused by the Site Condition.

14.5  "Mark-up" is defined to be the overhead and profit that is specified in the Contract or any applicable Laws.  However, if not so



Initial

specified, Subcontractor's Mark-up shall be defined to be not more than 15% of the actual cost of the Change Order Work or an amount agreed to or established by Client. Contractor shall be entitled to its own Mark-up from Client in addition to the Mark-up passed-through to Subcontractor for all Work performed under the Subcontract to the extent permitted by the Contract or by any applicable Laws or as agreed to by Client. Subcontractor agrees that payment of its Change Order fully compensates Subcontractor for all jobsite and home office overhead incurred by Subcontractor and its lower tier subcontractors and suppliers for the time period during which the work is performed under the Change Order.

14.6 Subject to the limitations stated in this Article 14.0, if pursuant to this Article 14.0 there is any Change or Subcontractor has encountered a Site Condition and has complied with all time limitations in Section 14.4 and Contractor and Subcontractor are unable to agree on an adjustment to the Subcontract Price or method for adjusting the Subcontract Price (including unit price or force account rates) and/or adjustment in the Work Progress Schedule; or if a dispute arises between Contractor and Subcontractor as to whether work performed by Subcontractor is included as part of its scope of Work; or if a dispute arises as to the validity of Contractor withholding any sums or exercising any of its rights under this Subcontract; or Subcontractor believes it is entitled to more time or compensation for the delays referred to in section 8.5 (collectively "Sub Claim"), then Subcontractor shall timely perform such work so as not to delay the Work Progress Schedule and the Sub Claim shall be resolved pursuant to Article 23.0.

**15.0 TERMINATION OR SUSPENSION OF WORK FOR CONVENIENCE:** 15.1 If Client for any reason (including Client's convenience) terminates or suspends performance of the Work, or any portion of it under the Contract, Contractor may order Subcontractor to terminate or suspend its performance of the Work, or any portion of it and Contractor shall not be liable in any way for any such termination or suspension. Provided, however, to the extent that Contractor is compensated by Client by reason of such termination or suspension, then in such event Contractor shall pay to Subcontractor an equitable portion of said sum based upon the Work performed. Subcontractor shall not be entitled to lost profit or overhead if work is terminated or suspended. In no event, absent Contractor's written determination to terminate this Subcontract, shall any change, directive or other communication from Client effect a termination or suspension of the Work or entitle Subcontractor or any of its sub-subcontractor's to any additional compensation, whether or not such change, directive or other communication from Client affects the means, methods, techniques or design of the Work or the Project.

15.2 In addition to Contractor's right to terminate or suspend the Work under Section 15.1, Contractor may, at any time terminate or suspend performance of the Work, or any portion thereof, at Contractor's convenience by service of written notice upon Subcontractor. Upon receipt of such notice, Subcontractor shall, unless the notice directs otherwise, immediately discontinue the Work, or designated portion thereof, and placing of orders for services, materials, facilities and supplies in connection with the performance thereof, and shall, unless otherwise directed, make every effort to procure cancellation of all existing orders or contracts related to such suspended or terminated Work upon terms approved by Contractor, or at the option of Contractor, give Contractor the right to assume the responsibilities and benefits of those obligations. Subcontractor shall thereafter do only such Work as may be necessary to preserve and protect the Work already in progress and to inventory and protect material and equipment on the job site, equipment in storage off of the job site (if previously allowed in writing on terms directed by Contractor) or in transit thereto.

15.2.1 Upon such termination for Contractor's convenience, Subcontractor shall be entitled to payment in accordance with and subject to the requirements of Article 5.0, only as follows: (1) payment shall be made to Subcontractor commensurate with the percentage of Work properly completed through the date of termination (but in any event no more than one hundred fifteen percent (115%) of the cost of said percentage of Work completed); plus (2) such other actual and unavoidable out of pocket termination costs incurred by Subcontractor and approved in advance by Contractor.

15.3 Termination costs to be paid to Subcontractor under this Article 15.0 shall be subject to Contractor's right to withhold as set forth in Article 5.0.

**16.0 DEFAULT BY SUBCONTRACTOR; TWO DAYS TO CURE:** 16.1 Immediately following the request of Contractor, Subcontractor shall provide Contractor with assurances of its ability to perform the Work and to meet its obligations in accordance with the requirements of this Subcontract or, in lieu thereof, statements of credit worthiness, either of which shall be subject to the reasonable satisfaction of Contractor.

16.2 Contractor may terminate this Subcontract for default if Subcontract defaults under any obligation under this Subcontract and fails to cure said default within two (2) business days of receipt of notice of said default from Contractor. A material breach of Subcontractor's obligation under this Subcontract shall include, without limitation, any of the following: (i) Subcontractor's failure to commence promptly or to prosecute the Work diligently in accordance with the Work Progress Schedule; (ii) Subcontractor's failure to provide Contractor with reasonably satisfactory evidence of its ability to perform (including evidence of its financial capability to perform) and/or statements of credit worthiness as required under Section 16.1; (iii) Subcontractor's insolvency, the filing by Subcontractor of a petition in bankruptcy, Subcontractor's making of an assignment for the benefit of creditors, or the filing of an involuntary petition for Subcontractor's bankruptcy by creditors; (iv) becoming involved in labor difficulties that do not constitute an excusable condition under Section 8.5; (v) Subcontractor's failure maintain any policy of insurance or provide proof of such insurance as required under Article 10.0; (vi) Subcontractor's failure to pay payroll when due or payments to union trust funds in a timely manner; (vii) Subcontractor's failure to timely pay or discharge in full or provide adequate security for the payment of all claims of any persons, or entities furnishing or claiming to have furnished labor, materials, equipment or incidentals used in, upon or for the Project, including any of Subcontractor's lower tier subcontractors or their

Initial _____

suppliers, whether or not, as to any such claim, a lien or right of enforcement is established or attempted to be established upon or against the Project, the Work, the real property upon which the Work is situated, upon any bond furnished by Contractor or Client or upon any monies payable to Contractor by Client; and/or (viii) Subcontractor's material failure to perform any other obligation required of it under this Subcontract in a timely manner.

16.3 In the event Subcontractor fails to cure any default under Section 16.2 within the time period stated in 16.2, Contractor, subject to Article 28, shall have the right (but not the duty), if it so elects, to exercise any or all of the following remedies:

16.3.1 Supply such number of workers and quantity of materials, equipment and other facilities as Contractor deems reasonably necessary for the completion of the Work or the orderly progress of the Work, or any part of the Work that Subcontractor has failed to complete or perform, and charge the cost thereof to Subcontractor, who shall be liable for the payment of same including reasonable overhead, profit and actual attorneys' fees incurred as a result of Subcontractor's default;

16.3.2 Contract with one (1) or more additional contractors to perform such part of the Work as Contractor shall determine will provide the most expeditious completion of the total work required by the Contract and charge the cost thereof to Subcontractor;

16.3.3 Withhold payment of any monies due Subcontractor pending corrective action to that required by and to the reasonable satisfaction of Contractor; and/or

16.3.4 Terminate the right of Subcontractor to perform the Work and to use any materials, equipment, appliances or tools at the site of the Work furnished by or belonging to Subcontractor.

16.4 In the event of an emergency affecting or threatening to affect the safety of persons or property, Contractor may proceed as provided in Section 16.3.1 through Section 16.3.4 without notice required under Section 16.2

16.5 In the event Subcontractor files a petition in Bankruptcy under Chapter 7, 11 or 13, the Parties agree that any delay attendant to the assumption or rejection of this Subcontract by a trustee or a debtor-in-possession will be prejudicial to Contractor. Consequently, Subcontractor hereby stipulates, in order to minimize delay to the Project and to mitigate damages and/or other prejudice suffered by Contractor, to a notice period of ten (10) calendar days for Contractor's motion to require Subcontractor to elect to assume or reject this Subcontract.

**17.0 RESPONSIBILITY FOR WORK:** Subcontractor shall be responsible for and shall bear any loss of or damage to the Work and all materials, supplies and equipment under the care, custody and/or control or for which it is otherwise responsible until final approval and acceptance thereof by Client, except where such loss or damage results from the negligence of Contractor. Subcontractor shall be responsible to Contractor for any damage to the Work, other Project work or property of Client, Contractor or others caused by any act or omission of Subcontractor or anyone acting for or on its behalf.

**18.0 LABOR CONDITIONS:** Subcontractor shall not use any class of workers, materials, or methods, which may cause strikes, or labor disturbances and Subcontractor shall comply with all labor Laws applicable to the Work as are now or may hereafter be in force and effect. Subcontractor shall have regard for, and, to the extent permissible under any Laws comply with and be bound by such terms and conditions of the labor agreements to which Contractor is signatory (identified below) as are applicable to the Work to be done hereunder, including any arbitration provision (or other dispute resolution provisions contained in such labor agreements) or the terms and provisions providing for the assignment of work or the settlement of jurisdictional disputes or the payment of contributions to union trust funds or the posting of all surety bonds required by such labor agreements. Subject to relief as allowed under the Contract (as provided in Section 8.5), Subcontractor shall be required to man its Work so as to maintain the Work Progress Schedule regardless of any labor activity including strikes, picketing or other labor disturbances. Subcontractor shall conform to prevailing wage and certified payroll requirements applicable to the Project, if any. Immediately upon the request of Contractor, Subcontractor shall remove from the Project any employee whom Contractor determines to be incompetent, undesirable or presents a threat of risk or harm to others. Subcontractor agrees that if any portion of the Work is further subcontracted, sub-subcontractor shall be bound by and observe the provisions of this Article 18.0 to the same extent as herein required of Subcontractor, and that a copy of this Article 18.0 imposing such obligations upon such sub-subcontractor shall be included in any further sub-subcontract.

**19.0 INSPECTION; TWO DAYS TO CORRECT:** The Work shall at all times be subject to inspection by Client and Contractor or their designated agents or representatives. In the event that any part of the Work is determined by Client or Contractor to be improper, defective or otherwise fails to conform to the Subcontract Documents, either during the performance of the Work or during any guarantee period provided in the Contract or if there be none, then for a period of one (1) year from completion and acceptance of the Project by Client, Subcontractor shall, within two (2) business days of notification by Contractor to do so, immediately and diligently proceed to remove, dispose of and replace the same, and make good all work damaged or destroyed by or as a result of such defective, improper or nonconforming Work or materials or by the dismantling, removal or replacement of the defective, improper or non-conforming Work at Subcontractor's own cost and expense. If Subcontractor shall fail within such two (2) business day period to immediately proceed and continue thereafter to diligently replace or correct improper, defective or non-conforming Work promptly and completely, Contractor, at its option, may replace or correct the same and Contractor may declare Subcontractor in default of this Subcontract and shall have the

Initial _____

right, if it so elects, to exercise any or all of the remedies in Sections 16.3.1 through 16.3.4. Subcontractor shall be responsible for all costs, expenses (including actual attorney's fees), liabilities and consequential damages incurred by Contractor in connection with said replacements or corrections, whether removed, disposed of and replaced by Subcontractor or Contractor or others. Subcontractor shall execute and timely provide any special guarantees in the manner and to the extent required by the terms of the Subcontract Documents. Provided, however, the period of time given Subcontractor to repair and/or replace Work that is improper, defective or is otherwise non-conforming shall not be construed as granting to Subcontractor a time extension for the performance of all or any portion of the Work. Delays caused by Subcontractor's (i) failure to timely perform the Work in a proper manner or (ii) correction or replacement of improper, defective or otherwise non-conforming Work shall be the sole responsibility of Subcontractor.

**20.0 CLEAN-UP:** Subcontractor shall carry on its operations so that the Project site shall at all times be clean, orderly and free from debris and waste. Upon completion of its Work, Subcontractor shall remove all equipment and unused materials from the site, clean up all refuse and debris, and leave the site of the Work clean, orderly and in good condition. If Subcontractor fails to keep the premises clean in accordance with the requirements of this Article 20.0, Contractor may clean, or cause the premises to be cleaned by others and shall be reimbursed by Subcontractor for all costs and expenses incurred in doing so plus a reasonable amount for overhead and profit.

**21.0 BOND:** Contractor may, at Contractor's sole discretion and expense, require that Subcontractor obtain and furnish surety bonds guaranteeing full performance of this Subcontract and that Subcontractor will promptly and fully pay for all work, labor and materials and other charges or costs in connection with the Work (collectively the "Bonds"). The form of the Bonds, the amount of the Bonds and surety underwriting the Bonds shall be acceptable to Contractor in its sole discretion.

**22.0 ENTIRE SUBCONTRACT:** The Subcontract Documents comprise the entire and integrated agreement between Contractor and Subcontractor and supersede any and all prior negotiations, representations, understandings, and agreements, written or oral, relating to the Work or the relationship between the parties. No agent of either party has authority to make and the parties shall not be bound by or liable for any statement, representation, promise or agreement not set forth herein. No changes, amendments or modifications of the terms hereof shall be valid unless reduced to writing and signed by Contractor and Subcontractor.

**23.0 DISPUTE RESOLUTION: 23.1** Any controversy, claim or dispute of whatever nature and on any theory, including negligence, misrepresentation, fraud or construction defect, that arises out of or relates to the Subcontract (including its interpretation or application), the Work, Sub Claims or any acts or omissions of Subcontractor, including the determination of the scope of this agreement to arbitrate, shall be decided by binding arbitration in accordance with the then current Construction Industry Rules of the American Arbitration Association, except for: disputes that have been waived by the making or acceptance of final payment or questions regarding the licensure of Subcontractor or litigation referred to in section 23.2.

**23.1.1** Prior to demanding arbitration, the Subcontractor shall notify Contractor of its intent to demand arbitration and promptly upon such notification; the Contractor and Subcontractor shall meet to informally resolve such dispute. In the event that no resolution is achieved, and if, but only if, the parties mutually agree, then prior to the Subcontractor demanding arbitration, the parties shall make a good faith effort to resolve the dispute by negotiations between representatives with decision-making power, who, to the extent possible, shall not have had substantive involvement in the matters of the dispute.

**23.1.2** Notice of the demand for arbitration shall be filed in writing with the other party to this Subcontract in accordance with the then current Construction Industry Rules of the American Arbitration Association. For claims arising out of or related to Sub Claims or Claims For Extras (as defined in section 23.4) the demand for arbitration may be made by either party and shall be made within a reasonable time but in no event later than thirty (30) calendar days after final acceptance of the Project by Client. All other demands for arbitration, including warranty claims and joinder or consolidation into other arbitration proceedings under sections 23.1.3 and 23.3, may be made by either party and shall be made within a reasonable time but in no event after the date when institution of legal or equitable proceedings based on such claim, dispute or other matter in question would be barred by the applicable statute of limitations. The award rendered by the arbitrator(s) shall be final and judgment may be entered upon it in accordance with applicable Law in any court having jurisdiction.

**23.1.3** Contractor may consolidate any arbitration between Contractor and Subcontractor or join Subcontractor into any arbitration or other dispute resolution proceeding provided for in the Contract ("Consolidated Arbitration") to the extent permitted by the Contract. Provided Subcontractor is afforded a reasonable opportunity to participate in the Consolidated Arbitration, Subcontractor shall be bound by the result of the Consolidated Arbitration to the same degree as the Contractor including the award rendered by the arbitrator(s) being final and judgment allowed to be entered upon it in accordance with applicable Law in any court having jurisdiction.

**23.2** In the event any person or entity including Client is engaged in litigation ("Litigation") against Contractor, or against Client who is pursuing a cross action against Contractor, on any theory of claim including negligence, fraud, strict liability or construction defects arguably caused in whole or in part by Subcontractor, then Contractor may join Subcontractor into such litigation.

**23.3** If Contractor agrees or is compelled to arbitrate said Litigation ("Third Party Arbitration"), then Contractor may consolidate any arbitration between Contractor and Subcontractor or join Subcontractor into any such Third Party Arbitration. Provided Subcontractor is afforded a reasonable opportunity to participate in the Third Party Arbitration, Subcontractor shall be bound by the result of the Third Party Arbitration to the same degree as the Contractor including the arbitrator(s) award being final and judgment allowed to be entered upon

Initial _____

it in accordance with applicable Law in any court having jurisdiction.

23.4 It shall be the responsibility of Subcontractor to prepare, present and prosecute Contractor's case to the extent the case is related to Sub Claims or any other claims of Subcontractor that originate with Client or for which Client is responsible and for which Subcontractor is or will be seeking additional compensation from Contractor (collectively "Claims For Extras"). Contractor's sole obligation is to present any timely-filed Claims For Extras to Client in accordance with the procedure provided in the Contract and, subject to the other provisions of this Subcontract, to pay to Subcontractor the proportionate share of any sums paid by the Client to which Subcontractor is entitled. Contractor's obligation to present Subcontractor's Claims For Extras to Client shall be subject to Subcontractor's compliance with all applicable Laws including those relating to false claims, dispute and claim certifications, cost and pricing data requirements and such other requirements as deemed necessary by Contractor to determine the validity of the claim of Subcontractor (e.g. cost and pricing data).

23.5 Unless otherwise agreed in writing, Subcontractor shall carry on the work and maintain the Work Progress Schedule pending arbitration, and, if so, Contractor shall continue to make undisputed payments in accordance with this Subcontract.

23.6 This Article shall not be deemed a limitation of any rights or remedies which Contractor and/or Subcontractor may have under any federal or state mechanics' lien Laws or under any applicable labor and material payment bonds unless such rights or remedies are expressly waived by it. If required by statute to perfect or preserve lien, bond or stop notice rights, Subcontractor may commence litigation. However, such litigation shall be stayed or enjoined by stipulation or upon Contractor's motion pending a resolution or adjudication of any underlying issues in dispute that affect payment to Subcontractor.

23.7 This Article shall survive any actual or purported termination or rescission of this Subcontract.

23.8 If Contractor or Subcontractor brings a motion to dismiss or stay litigation pending arbitration or action or motion to compel arbitration, the prevailing party in such proceeding shall be entitled to recover reimbursement of actual attorney and expert fees and costs incurred to prosecute the motion.

24.0 MISCELLANEOUS: (i) As used in this Subcontract, the singular includes the plural; the masculine includes the feminine and neuter; (ii) If more than one person or entity is named herein as Subcontractor, their obligations shall be joint and several; (iii) All references to Subcontractor shall be construed to include its agents, employees, and its subcontractors of every tier and their vendors unless the context indicates otherwise; (iv) All references to sub-subcontractor shall include its subcontractors of every tier and their vendors unless the context indicates otherwise; (v) The parties and their respective assigns (to the extent such assigns are consented to as required in Section 13.2), legal representatives and other successors in interest will be bound hereby; (vi) The term "including" shall be construed to mean "including, but not limited to".

25.0 PRECAUTIONS: 25.1 Subcontractor shall be solely responsible for providing a safe place to work for Subcontractor's employees and for employees of its subcontractors and suppliers (hereafter "Employees"). Subcontractor shall take all necessary steps to protect Employees from risk of harm or injury and shall be responsible for any conditions that present a risk of occupational injury or illness to Employees and shall not be relieved of such responsibility by any acts or omissions of Contractor. Subcontractor shall continuously inspect its Work, methodologies and materials (including the adequacy of and required use of all safety equipment) to discover and determine any conditions which pose a risk of bodily harm to Employees or other persons on site or a risk of damage to property (including, the property of Client, Contractor and/or third parties) or a violation of any applicable Laws. With regard to industrial safety, Subcontractor's obligations are independent obligations and Subcontractor is vested with the authority and shall take all precautions which are necessary and adequate to protect against and/or correct any such conditions immediately upon first becoming aware of the existence of such conditions whether by Subcontractor's discovery of such conditions or being made aware of the existence of such conditions by others.

25.2 Subcontractor shall receive, respond to, defend and be responsible for and shall indemnify, defend and hold Client and Contractor harmless from, and against, any citation, order, claim, charge or action arising out of, resulting from or incidental to conditions that present a risk of occupational injury or illness to Employees regardless of whether such condition results from the active or passive acts or omissions of Subcontractor (or those for whom it is responsible) or whether such conditions are the sole or a contributing cause to the conditions giving rise to or resulting in the issuance or prosecution of a citation, order, claim, charge or action.

25.3 Subcontractor's obligations under this Article 25.0 are in addition to and not in lieu of all other provisions of this Subcontract.

26.0 SEVERABILITY: It is the Parties intent that this Subcontract not violate any Law. In the event that any provision of this Subcontract shall at any time contravene in whole or in part any applicable Law, then such provision shall remain in effect only to the extent permitted, and the remaining provisions hereof shall remain in full force and effect.

27.0 EQUAL OPPORTUNITY: Subcontractor will comply with all provisions of Executive Order No. 11246, of September 24, 1965, or as amended or superseded, and of the rules, regulations and relevant orders of the Secretary of Labor and other rules and regulations as provided by any Law. Subcontractor shall furnish all information and reports as may be required and will permit access to Subcontractor's books, records, and accounts by Contractor, governmental agencies and Secretary of Labor for the purpose of investigating compliance with such rules, regulations and relevant orders.

Initial _____

**28.0 LEGAL REMEDIES:** Either party hereto shall be entitled to all remedies afforded by Law or in equity to enforce their respective rights under this Subcontract. With the exception of the obligation of the Parties to proceed with arbitration as provided in Article 23, no right or remedy in the Subcontract, including those remedies provided for in Articles 16 and 19, are intended to be exclusive of any other right or remedy, but every such right or remedy shall be cumulative and shall be in addition to and not a limitation of any duties, obligations, rights and remedies otherwise imposed or available by Law, in equity or in the Subcontract.

**29.0 JURISDICTION:** It is understood and agreed that each and every provision of this Subcontract, including any alleged breach thereof, shall be interpreted in accordance with the Laws of the State where the Project is located.

**30.0 TAX LEVIES:** Contractor may, in its absolute discretion, pay directly to taxing authorities any sums otherwise due Subcontractor and not subject to set-off under Section 5.7 hereof, upon receipt of a tax levy from such taxing authority.

**31.0 COMMUNICATIONS:** Subcontractor shall not communicate directly with Client or design professionals not under contract to Subcontractor. All communications to be addressed to Client or design professionals not under contract to Subcontractor shall be through Contractor only.

Subcontractor: Willkom, Inc.

Authorized Signature: _Orville D.B. Willkom_

Printed Name: Orville D.B. Willkom

Printed Title: PRES.

State License Number: 889329

Expiration: 01-31-2019

Federal I.D. Number: 20-2419693

Tax I.D.: 202419693

Date: 09/30/17

Contractor: West Point Contractors, Inc.

Authorized Signature: _____

Printed Name: Alex Contreras

Printed Title: VP Operations 10/3/2017

Date: _____

# Appendix A

## NAVFAC Building 61

Initial _____

# SCOPE OF WORK

**1.0   GENERAL**
Subcontractor shall furnish all manpower, equipment, materials, supplies, plant, services, utilities, access, inspection, permits, insurance, taxes and all other items and incidental expenses necessary to complete the Work in strict conformity with the Subcontract Documents, including the Work described in the Appendix A, and generally described as:

<u>**Roofing**</u>

**2.0   SPECIFICATIONS AND DRAWINGS**
The following Attachments are incorporated by reference and are included as Subcontract Documents:
   2.1   Attachment 3 – Contract SOW

The Specifications and Drawings listed in Attachment 3 Contract SOW are incorporated herein by reference and included as Subcontract Documents.

**3.0   DESCRIPTION OF WORK**
Subcontractor's Scope of Work is to perform Roofing whole and complete in accordance with the Subcontract Documents, subject to Clarifications noted below.
   **3.1   Clarifications**
      3.1.1   Contractor to remove and reinstall all HVAC components. Coordination will be required to meet the owners timelines of 8 hours without cooling.
      3.1.2   Subcontractor to inspect deck prior to loading and notify contractor of any concerns. Notification to be provided in narrative form with supporting photographical documentation.
      3.1.3   Subcontractor to complete demolition of existing roof, including but not limited to gutters and flashing
      3.1.4   Subcontractor to provide Fall Protection plan to Contractor. Plan needs to detail what fall protection will be used, where anchors will be installed (drawing), or use of existing anchors, documentation of employee training on fall protection, etc....
      3.1.5   All work to be completed in accordance to manufacturer specifications and scope of work provided by WPC.

   **3.2   Exclusions**
      3.2.1   SUBCONTRACTOR excludes removal of asbestos or lead and/or installing new crickets.

**4.0   PERFORMANCE, SCHEDULE, AND SEQUENCE OF WORK**
   •   Project must be completed within 20 days from date of subcontract. Complete schedule will be provided after preconstruction meeting.

**5.0   LIST OF CONTRACT ATTACHMENTS (Included as Subcontract Documents)**
   Attachment 1        Wage Decision
   Attachment 2        SF 1413
   Attachment 3        Contract SOW



Initial

# Appendix B

### Roofing

### QUANTITIES, PRICES, AND PAYMENT

**1.0  SUBCONTRACT PRICE – LUMP SUM**

The Work performed by Subcontractor under this Subcontract shall be reimbursed on a lump sum basis in accordance with the pricing set forth in Section 1.1 below, unless otherwise stated herein.

1.1  Pricing – Schedule of Values

The pricing is as follows:

| Item No. | Description | Quantity (Approx) | U/M | Unit Price | Total |
|---|---|---|---|---|---|
| 01 | Building 61 | 1 | LS | 401, 119.54 | $401, 119.54 |
| | | | | | |
| | | | | **Total** | **$401,119.54** |

The Schedule of Values is firm for the duration of the Work and includes all Subcontractors' costs, expenses, overhead and profit for complete performance of the work.

The Schedule of Values includes all duties and fees.  Subcontractor shall not be reimbursed for personal property taxes on construction equipment and other property owned by Subcontractor, and taxes on net income of Subcontractor.

Subcontractor's AIA form for payment application must match exactly the Schedule of Values as shown in Appendix B, or be a breakdown of all or some of the individual line items included in the Schedule of Values in Appendix B as agreed to by Contractor.  Subcontractor shall provide a detailed Schedule of Values, which breaks down the total to a level of detail acceptable to the Contractor.

When requested by the Contractor, or when any potential cost impacts are realized, Subcontractor must submit change order pricing to the Contractor within 14 calendar days of either the Contractor's request or once the Contractor is notified. Subcontractor will also respond to any pricing validation requests or negotiated offers within 14 days of the initial issuance of the follow-up correspondence in a matter that promotes timely resolution of change requests.



Initial

# Appendix C

## SPECIAL PROVISIONS

1.  Subcontractor shall require that each of its personnel wear hard hats, safety vests, safety toed shoes, gloves and safety glasses at all times in addition to any PPE that is required by OSHA for the specific task being performed while on the jobsite. This requirement shall be in addition to any requirement for the wearing of personal protective safety equipment mandated by any applicable statute, law, rule and/or regulation. *All of Subcontractor's personnel must comply with and its equipment and operations must conform to applicable OSHA standards.* Subcontractor shall be solely responsible for informing its employees of the requirements of this provision. Subcontractor shall be solely responsible for enforcing compliance with this provision. It shall also require that each of its lower tier subcontractors comply with the requirements of this provision. Nothing contained in this provision shall create any rights in any party other than Contractor and Subcontractor and no other person or entity is intended to be a beneficiary of this provision. Nothing contained in this provision shall be construed to relieve Subcontractor of any obligations required of it under the Subcontract or obligations imposed by statute, law, rule or regulation or impose upon Contractor liability for the enforcement or failure to enforce this provision. Subcontractor shall ensure that they maintain an adequate amount of first aid kits to accommodate their crew size. Subcontractor to comply with Contractor and Owner's Quality Control and Safety Plans. Failure to follow Contractor's safety plan will result in the suspension of operations.

2.  If all of the Subcontract documents, Insurance Certificates, and Bonds (if applicable) are not returned within fifteen (15) days, the Contractor shall have the right to award the work to others.

3.  Prior to any progress payments being made, Subcontractor shall furnish to Contractor receipts, vouchers, and releases of claims of laborers, material suppliers and subcontractors performing work or furnishing material under this agreement. It is agreed that no payment hereunder shall be made at Contractor's option until or unless such releases are furnished. Prior to payment of retention of the amounts being withheld pursuant to the provisions of this section as a performance guarantee, Subcontractor shall have provided Contractor with releases executed by all persons who might have mechanics lien rights, stop notices, or labor or material bond rights against the job and arising out of the work.

4.  Subcontractor shall keep and maintain all books, paper, records, files, accounts, reports, bid documents with backup data, and all other material relating to the project for five years following completion and acceptance of the work and shall require its lower tier Subcontractors and material suppliers to do the same.

5.  Invoices must refer to this subcontract and the Job number, and submitted with certified payroll where applicable.

6.  This Subcontract shall not be effective until signed by an authorized person on behalf of Contractor.

7.  Contractor is relying upon Subcontractor's representation and warranty that Subcontractor is properly licensed to perform the work required by the Subcontract. It is understood that this representation and warranty is material to this Subcontract. Subcontractor shall defend and indemnify Contractor from any and all claims and damages, which Contractor may suffer as a result of a breach of this representation of warranty.

8.  All quantities are approximate. The unit prices for the listed items shall remain in force for the duration of the project, regardless of quantity unless dictated otherwise by Prime Contract.

9.  Subcontractor shall direct all communications concerning the Subcontractor's work to the Contractor's Project Manager or Project Superintendent, as applicable. In no case shall communications be made directly to Owner or the Owner's Representatives (Architects/Engineers or others) unless specifically directed by the Contractor. Any questions/clarifications pertaining to the Contract Documents requiring response shall be made in writing directed to Contractor.

10. Contractor shall provide access to the jobsite, which is clear and drivable. Subcontractor is responsible for its access to and from its work area and maintenance of such access unless otherwise noted.

11. Subcontractor shall provide all drinking water and ice for his own employees and that of his suppliers. However, Subcontractor may use Contractor's facilities where available.

12. Subcontractor shall remove all material and equipment from the project within 48 hours of completion of this Work.

13. Any changes or substitutions made by Subcontractor that increase the Contractor's cost of the work or the cost of the work of any other subcontractor shall be borne by Subcontractor after approval of layouts, basic equipment and code requirements have been established.

14. Subcontractor trailers and/or storage containers may only be located as designated by Contractor.

15. Jobsite Rules:

    A.   Weekly Subcontractor Safety Meetings must be held, and a report of topics and those in attendance must be submitted to Contractor.

    B.   No radios, tennis shoes, shorts, pets, unauthorized personnel, alcohol or drugs are permitted on the

Initial _____

jobsite.

16. Releases shall be in such form and manner as required by contractor. The dollar amount recited shall be the amount of the progress payment as determined and allowed by Owner and Contractor. It is Subcontractor's responsibility to reconcile its monthly requisition with Contractor so as to provide a release with the correct amount stated. Each release must be dated with a date that is the same or later than the latest date of labor, services, equipment, or materials included in the requisition furnished.

17. The original release furnished to Contractor must have an original signature by an authorized individual.

18. Release forms shall not be modified in any manner by Subcontractor.

19. Contractor's obligation to make payment to Subcontractor for material and equipment delivered and suitably stored at the site or off the site for subsequent incorporation into the Work shall be subject to the payment provisions of the Contract for material and equipment suitably stored on or off site prior to incorporation into the Work. To the extent that Contractor is entitled to payment for such materials and equipment under the Contract, such payment shall be made to Subcontractor pursuant to Article 5.0 of the Subcontract provided Subcontractor has timely delivered to Contractor an invoice for the material and equipment identifying the material and equipment, the source of the material and equipment, quantity of each type of material and equipment delivered, storage location of the material and equipment and such other and further information as Contractor may require and/or as may be required of Contractor under the Contract.

20. Where in the Contract Documents reference is made to the Contractor and the work or direction thereto would be a part of this Subcontractor's work, it shall be performed by this Subcontractor.

21. Subcontractor to comply with best practices with regards to SWPPP, local, state, and federal DEQ regulations.

22. Subcontractor shall be responsible for the coordination of its work with other trades that directly or indirectly affect its work. Any work improperly coordinated by the Subcontractor shall be installed or corrected by the Subcontractor at no additional cost to the Contractor.

23. Prior to commencing work, Subcontractor shall confirm the location of all existing utilities that occur within the vicinity of the new construction installed by this Subcontractor.

24. Payments to the Subcontractor will be based on agency recap quantities. Subcontractor shall be responsible for verification of recaps.

25. Subcontractor's price includes all mobilizations required to complete his work.

26. Subcontractor shall submit daily "Subcontractor's Daily Reports" no later than 7:00 a.m. each morning indicating the number of personnel working on the project site that day along with a description of activities and equipment used during the performance of the Work. Subcontractor shall indicate the progress of the previous day's activities including any and all shortages of material, schedule problems/progress and progress of the activities indicated for that day.

27. If allowed by the Owner for the Contractor, Subcontractor shall have the option to deposit securities with a mutually acceptable Escrow Agent, as a substitute for retention earnings required to be withheld by contractor pursuant to this Subcontract.

28. Subcontractor shall comply with all applicable laws, codes and regulations relating to activities in proximity to all above ground or underground facilities/utilities, whether public or private, including the location and protection of such facilities.

29. If the delivery of any material or equipment is delayed, prompt written notice must be given to Contractor.

30. Subcontractor shall cooperate with the Contractor and other subcontractors to coordinate all space requirements required by the Subcontractor's equipment and material storage. If placed without Contractor's approval, Subcontractor shall relocate or move stored material or equipment without additional expense if required by the Contractor.

31. When applicable, Subcontractor shall provide all scaffolding, staging, bracing, shoring and work platforms necessary for this Subcontractor's Scope of Work, including engineered drawings if required.

32. Subcontractor has taken into consideration existing ground conditions.

33. Subcontractor shall coordinate with the Contractor's jobsite Superintendent all traffic and pedestrian control for Subcontractor's own operations including that of his suppliers. This includes flagmen, barricades, etc., as may be required by any legal agency having jurisdiction over this project.

34. Subcontractor shall have an office representative present at the jobsite coordination meetings as directed by the Contractor. Should Subcontractor fail to attend these meetings, Subcontractor shall assume full responsibility for any coordination conflicts, which affect his Scope of Work.

35. Subcontractor must have a Hazard Communication program, Site Specific Safety Plan, and Activity Hazard Analysis as required under Federal and State regulations (OSHA) and submit upon request.

36. Subcontractor shall notify Contractor, within 24 hours, of any Safety Inspections performed by State or Federal Agencies (including, without limitation, OSHA, MSHA, EPA, etc.) and the results or conclusions of those inspections.

37. Subcontractor shall not cause or permit any "Hazardous Material" (as defined herein) to be brought upon, kept or used in or about the jobsite except to the extend such Hazardous Materials: (I) are necessary for the execution of the Work; (II) are required pursuant to the Contract documents; and (III) are used and handled in a safe and prudent manner in accordance with all applicable laws. Any hazardous Materials allowed to be used on the jobsite shall be used, stored and disposed of in compliance with all applicable laws relating to such hazardous Materials, including, without limitations the provisions of the Safe Drinking Water and Toxic Enforcement Act ("Proposition 65"). Any unused or surplus Hazardous Materials, as well as any other

Initial _____

hazardous Materials which have been placed, released, generated or discharged on the jobsite by Subcontractor or any of its second tier subcontractors, employees, agents, or suppliers, shall be removed from the jobsite at the earlier of: (I) the completion of the Work requiring the use of such hazardous materials; (II) the completion the work as a whole; or (III) within twenty-four (24) hours following owner's and/or Contractors demand for such removal. Such removal shall be undertaken by Subcontractor at its sole cost and expense, and shall be performed in accordance with all applicable laws. Any damage to the Work, the jobsite or any adjacent property resulting from the improper use, or any discharge, generation, or release, of hazardous Materials shall be remedied by Subcontractor at its sole cost and expense, and in accordance with all applicable State and/or federal statues, laws and regulations. Subcontractor shall immediately notify Contractor of any release or discharge of any hazardous Materials on the jobsite. Subcontractor shall provide Contractor with copies of all warning labels on products which any of its second tier subcontractors will be using in connection with the Work, and Subcontractor shall be responsible for making any and all disclosures required by applicable State and Federal statues, laws, rules and regulations including, without limitation, applicable "Community Right-To-Know" laws and Proposition 65. Subcontractor shall not clean or service any tools, equipment, vehicles, materials or other items in such a manner as to cause a violation of any laws or regulations relating to hazardous materials. All residue and waste materials resulting from any such clearing or servicing shall be collected and removed from the jobsite in accordance with all applicable State and Federal Statues, laws, rules and regulations. Subcontractor shall immediately notify Contractor of any citations, orders or warning issues to or received by Subcontractor, or of which Subcontractor otherwise becomes aware, which relate to any Hazardous materials on the jobsite. Without limiting any other indemnification provisions pursuant to law or specified in the Subcontract documents, Subcontractor shall indemnify, defend (at Subcontractor's sole cost, and with legal counsel approved by Contractor) and hold Contractor harmless from and against any and all claimed, demands, losses, damages, disbursements, liabilities, obligations, fines, penalties, costs and expenses in removing or remediating the effect of any Hazardous Materials on, under, from or about the jobsite, arising out of or relating to, directly or indirectly, Subcontractor's failure to comply with any of the requirements of this provision. As used herein, the term "Hazardous Materials" means any hazardous or toxic or hazardous material or substance.

38. Subcontractor shall take all reasonable precautions to protect existing buildings, facilities, utilities, properties, and work in progress from damage arising from the performance of this Subcontractor's work. Subcontractor shall be responsible for all associated costs resulting from damages caused by the Subcontractor or those for whom it is legally responsible.

39. Subcontractor shall provide Material Safety Data Sheets for all potentially hazardous substances as required by Federal and State hazard communication standards. The Material Safety Data Sheets are to be delivered to the Contractor's jobsite Superintendent a minimum of two weeks prior to the usage of the material.

40. Subcontractor shall at all times during the progress of his work have an authorized representative of his company at the jobsite who can receive orders and has full authority to make decisions regarding the Work to be performed hereunder and who has complete responsibility for the work insofar as this Subcontract agreement is concerned. The name of this authorized representative and the emergency telephone number of the Subcontractor shall be submitted to the Contractor prior to commencement of Subcontractor's work.

41. During the performance of this Contract, Subcontractor agrees as follows:

   A.   Subcontractor will not discriminate against any employee or applicant for employment because of race, color, religion, or national origin. Subcontractor will take affirmative action to ensure that applicants are employed and that employees are treated during employment, without regard to their race, color, religion, sex, age or national origin. Such action shall include, but not limited to, the following: Employment, upgrading, demotion or transfer, recruitment or recruitment advertising, layoff or termination, rates of pay or other forms of compensation, and selection for training including apprenticeship. Subcontractor agrees to post in conspicuous places available to employees and applicants for employment notices to be provided by the contracting officer setting forth the provisions of this non-discrimination clause.

   B.   Subcontractor will, in all solicitations or advertisements for employees placed by or on behalf of Subcontractor, state that all qualified applicants will receive consideration for employment without regard to race, color, religion, sex, or national origin.

   C.   Subcontractor will send to each labor union or representative of workers with which he/she has a collective bargaining agreement or other contract or understanding a notice to be provided by the agency contracting officer, advising the labor union or worker's representative of Subcontractor's commitments under section 202 of Executive Order 11246 of September 24, 1965, and shall post copies of the notice in conspicuous place available to employees and applicants for employment.

   D.   Subcontractor will comply with all provisions of Executive Order 11246 of September 24, 1965 and of the rules, regulations, and relevant orders of the Secretary of Labor.

   E.   Subcontractor will furnish all information and reports required by Executive Order 11246 of September 24, 1965, and by the rules, regulations and orders of the Secretary of Labor, or pursuant thereto, and will permit access to his books, records, and accounts by the contracting agency and the Secretary of Labor for purposes of investigation to ascertain compliance with such rules, regulations, and orders.

   F.   In the event Subcontractor's non-compliance with the nondiscrimination clauses of this Contract or with any of such rules, regulations, or orders, this Contract may be canceled, terminated or suspended in whole or in part and the Subcontractor may be declared ineligible for further Government contracts in accordance with procedures authorized


Initial

in Executive Order 1124 of September 24, 1965, and such other sanctions may be imposed and remedies invoked as provided in Executive Order 11246 of September 24, 1965, or by rules, regulations, or order of the Secretary of Labor, or as otherwise provide by law.

G.   Subcontractor will include the provisions of paragraphs (A) through (G) in every subcontract or purchase order unless exempted by rules, regulations or orders of the Secretary of Labor issued pursuant to Section 204 of Executive Order 11246 of September 24, 1965, so that such provisions will be binding upon each subcontractor or vendor. Subcontractor will take such action with respect to any subcontract or purchase order as may be directed by the Secretary of Labor as a means of enforcing such provisions including sanctions for non-compliance: provided, however, that in the event Subcontractor becomes involved in, or is threatened with litigation with a subcontractor or vendor as a result of such direction, Subcontractor may request the United States to enter into such litigation to protect the interests of the United States. In addition, the seller shall comply with Section 402 of the Vietnam Era Veterans Readjustment Assistant Act of 1974, as amended and Section 503 of the Rehabilitation Act of 1973.

H.   Forms SF 1413 and SF 1413S must be completed and signed upon execution of this contract.

42.  SECTION 16, BOND is hereby waived.


Initial

# Appendix D

### Roofing

### INSURANCE

**INSURANCE LIABILITY LIMITS – APPLICABLE TO ALL SUBCONTRACTORS OF ANY TIER:**

1.    **Workers' Compensation & Employers' Liability**

Workers' Compensation Limits – Statutory as required by applicable State Law

Employers' Liability Limits
$1,000,000 Each Accident
$1,000,000 Disease - Policy Limit
$1,000,000 Disease - Each Employee
If exposure exists, Subcontractor must show evidence of USL&H coverage and Maritime coverage with a minimum limit of $2,000,000 for Jones Act Coverage;

The insurer shall agree to waive all rights of subrogation against Contractor, its officers and employees arising from work performed by Subcontractor for Contractor.

$2,000,000 Umbrella

2.    **Commercial General Liability (Occurrence Form Only) Limits**

$1,000,000 Each Occurrence /$2,000,000 Aggregate
$1,000,000 Personal Injury Liability
$1,000,000 Aggregate for Products-Completed Operations

Including products, completed operations, contractual liability, broad form property damage, and coverage for explosion, collapse, and underground damages.

3.    **Automobile Liability Limits**

$1,000,000 Combined Single Limit Each Occurrence Bodily Injury and Property Damage Including Owned, Non-owned, and Hired Vehicles.

4.    **Professional Liability Limits - APPLICABLE TO ALL SUBCONTRACTORS OF ANY TIER PERFORMING ANY PROFESSIONAL SERVICES INCLUDING ENGINEERS, SURVEYORS, OR CONSULTANTS.**

Professional Liability Limits – non-critical including access platforms, haul roads, mix-designs, surveyors, water and air systems, etc.
Limits for Professional Services of a non-critical nature (including mix-designs, haul roads, surveyors, water and air systems, etc.):

$1,000,000 Each Claim
$1,000,000 Aggregate

Limits for Professional Services of a critical nature (including design or engineering of permanent structures or temporary structures used in support of construction (including excavation) such as false work or shoring and crane lifting):

$2,000,000 Each Claim

Initial 

$2,000,000 Aggregate

5.    **EQUIPMENT INSURANCE** must be maintained by all Subcontractors of any tier for owned, leased, rented and borrowed equipment.

6.    CBP and West Point to be named as additionally insured.

The additional insured endorsement required under Article 10.0 shall be written on standard ISO form CG 20 10 11 85 (Form B) or ISO form CG 20 10 10 01 in combination with ISO form CG 20 37 10 01 or the equivalent without modification or change from the standard ISO form language and including that this insurance shall serve as primary without qualification. The additional insured completed operations coverage through the statue of repose of any state jurisdiction.

Initial _____

# Appendix E

## Roofing

### "Labor Standard Provisions – 29 CFR 5.5"

(a)  The Agency head shall cause or require the contracting officer to insert in full in any contract in excess of $2,000 which is entered into for the actual construction, alteration and/or repair, including painting and decorating, of a public building or public work, or building or work financed in whole or in part from Federal funds or in accordance with guarantees of a Federal agency or financed from funds obtained by pledge of any contract of a Federal agency to make a loan, grant or annual contribution (except where a different meaning is expressly indicated), and which is subject to the labor standards provisions of any of the acts listed in § 5.1, the following clauses (or any modifications thereof to meet the particular needs of the agency, Provided, That such modifications are first approved by the Department of Labor):

(1)  **Minimum wages.**

    (i)  All laborers and mechanics employed or working upon the site of the work (or under the United States Housing Act of 1937 or under the Housing Act of 1949 in the construction or development of the project), will be paid unconditionally and not less often than once a week, and without subsequent deduction or rebate on any account (except such payroll deductions as are permitted by regulations issued by the Secretary of Labor under the Copeland Act (29 CFR part 3)), the full amount of wages an bona fide fringe benefits (or cash equivalents thereof) due at time of payment computed at rates not less than those contained in the wage determination of the Secretary of Labor which is attached hereto and made a part hereof, regardless of any contractual relationship which may be alleged to exist between the contractor and such laborers and mechanics.

Contributions made or costs reasonably anticipated for bona fide fringe benefits under section 1(b)(2) of the Davis-Bacon Act on behalf of laborers or mechanics are considered wages paid to such laborers or mechanics, subject to the provisions of paragraph (a)(1)(iv) of this section; also, regular contributions made or costs incurred for more than a weekly period (but not less often than quarterly) under plans, funds, or programs which cover the particular weekly period, are deemed to be constructively made or incurred during such weekly period. Such laborers and mechanics shall be paid the appropriate wage rate and fringe benefits on the wage determination for the classification of work actually performed, without regard to skill, except as provided in § 5.5(a)

(4). Laborers or mechanics performing work in more than one classification may be compensated at the rate specified for each classification for the time actually worked therein: Provided, That the employer's payroll records accurately set forth the time spent in each classification in which work is performed. The wage determination (including any additional classification and wage rates conformed under paragraph (a)(1)(ii) of this section) and the Davis-Bacon poster (WH-1321) shall be posted at all times by the contractor and its subcontractors at the site of the work in a prominent and accessible place where it can be easily seen by the workers.

    (ii)  (A) The contracting officer shall require that any class of laborers or mechanics, including helpers, which is not listed in the wage determination and which is to be employed under the contract shall be classified in conformance with the wage determination. The contracting officer shall approve an additional classification and wage rate and fringe benefits therefore only when the following criteria have been met:

1.  The work to be performed by the classification requested is not performed by a classification in the wage determinate and
2.  The classification is utilized in the area by the construction industry; and
3.  The proposed wage rate, including any bona fide fringe benefits, bears a reasonable relationship to the wage rates contained in the wage determination.

(B) If the contractor and the laborers and mechanics to be employed in the classification (if known), or their representative and the contracting officer agree on the classification and wage rate (including the amount designated for fringe benefits which appropriate), a report of the action taken shall be sent by the contracting officer to the Administrator of the Wage and Hour Division, Employment Standards Administration, U.S. Department of Labor, Washington, DC 20210. The Administrator, or a authorized representative, will approve, modify, or disapprove every additional classification action within 30 days of receipt and so advise the contracting officer or will notify the contracting officer within the 30-day period that additional time is necessary.

(C) In the event the contractor, the laborers or mechanics to be employed in the classification or their representatives, and the contracting officer do not agree on the proposed classification and wage rate (including the amount designated for fringe benefits, where appropriate), the contracting officer shall refer the questions, including the views of all

Initial _____

interested parties and the recommendation of the contracting officer, to the Administrator for determination. The Administrator, or an authorized representative, will issue a determination within 30 days of receipt and so advise the contracting officer or will notify the contracting officer within the 30-day period that additional time is necessary.

(D) The wage rate (including fringe benefits where appropriate) determined pursuant to paragraphs (a)(1)(ii) (B) or (C) of this section, shall be paid to all workers performing work in the classification under this contract from the first day on which work is performed in the classification.

(iii)     Whenever the minimum wage rate prescribed in the contract for a class of laborers or mechanics includes a fringe benefit which is not expressed as an hourly rate, the contractor shall either pay the benefit as stated in the wage determination or shall pay another bona fide fringe benefit or an hourly cash equivalent thereof.

(iv)     If the contractor does not make payments to a trustee or other third person, the contractor may consider as part of the wages of any laborer or mechanic the amount of any costs reasonably anticipated in providing bona fide fringe benefits under a plan or program, Provided, That the Secretary of Labor has found, upon the written request of the contractor, that the applicable standards of the Davis-Bacon Act have been met. The Secretary of Labor may require the contractor to set aside in a separate account assets for the meeting of obligations under the plan or program.

(2)   Withholding. The (write in name of Federal Agency or the loan or grant recipient) shall upon its own action or upon written request of an authorized representative of the Department of Labor withhold or cause to be withheld from the contractor under this contract or any other Federal contract with the same prime contractor, or any other federally-assisted contract subject to Davis-Bacon prevailing wage requirements, which is held by the same prime contractor, so much of the accrued payments or advances as may be considered necessary to pay laborers and mechanics, including apprentices, trainees, and helpers, employed by the contractor or any subcontractor the full amount of wages required by the contract. In the event of failure to pay any laborer or mechanic, including any apprentice, trainee, or helper, employed or working on the site of the work (or under the United States Housing Act of 1937 or under the Housing Act of 1949 in the construction or development of the project), all or part of the wages required by the contract, the (Agency) may, after written notice to the contractor, sponsor, applicant, or owner, take such action as may be necessary to cause the suspension of any further payment, advance, or guarantee of funds until such violations have ceased.

(3)   Payrolls and basic records.

i.     Payrolls and basic records relating thereto shall be maintained by the contractor during the course of the work and preserve for a period of three years thereafter for all laborers and mechanics working at the site of the work (or under the United States Housing Act of 1937, or under the Housing Act of 1949, in the construction or development of the project). Such records shall contain the name, address, and social security number of each such worker, his or her correct classification, hourly rates of wages paid (including rates of contributions or costs anticipated for bona fide fringe benefits or cash equivalents thereof of the types described in section 1(b)(2)(B) of the Davis-Bacon Act), daily and weekly number of hours worked, deductions made and actual wages paid. Whenever the Secretary of Labor has found under 29 CFR 5.5(a)(1)(iv) that the wages of any laborer or mechanic include the amount of any costs reasonably anticipated in providing benefits under a plan or program described in section 1(b)(2)(B) of the Davis-Bacon Act, the contractor shall maintain records which show that the commitment to provide such benefits is enforceable, that the plan or program is financially responsible, and that the plan or program has been communicated in writing to the laborers or mechanics affected, and records which show the costs anticipated or the actual cost incurred in providing such benefits. Contractors employing apprentices or trainees under approved programs shall maintain written evidence of the registration of apprenticeship programs and certification of trainee programs, the registration of the apprentices and trainees, and the ratios and wage rates prescribed in the applicable programs.

ii.     (A) The contractor shall submit weekly for each week in which any contract work is performed a copy of all payrolls to the (Write in name of appropriate federal agency) if the agency is a party to the contract, but if the agency is not such a party, contractor will submit the payrolls to the applicant, sponsor, or owner, as the case may be, for transmission to the (write in name of agency). The payrolls submitted shall set out accurately and completely all of the information required to be maintained under 29 CFR 5.5(a)(3)(i), except that full social security numbers and home addresses shall not be included on weekly transmittals. Instead the payrolls shall only need to include an individually identifying number for each employee (e. the last four digits of the employee's social security number). The required weekly payroll information may be submitted in any form desired. Optional Form WH-347 is available for this purpose from the Wage and Hour Division Web site at http://www.dol.gov/esa/whd/forms/wh347instr.htm or its successor site. The prime contractor is responsible for the submission of copies of payrolls by all subcontractors. Contractors and subcontractors shall maintain the full social security number and current address of each covered worker, and shall provide them upon request to the (write in name of appropriate federal agency) if the agency is a party to the contract, but if the agency is not such a party, the contractor will submit them to the applicant, sponsor, or owner, as the case may be, for transmission to the (write in name of agency), the contractor, or the Wage and Hour Division of the Department of Labor for purposes of an investigation or audit of compliance with prevailing wage requirements. It is not a violation of this section for a prime contractor to require a subcontractor to provide addresses and social security numbers to the prime contractor for its own records, without weekly submission to the sponsoring government agency (or the applicant, sponsor, or owner).

(B) Each payroll submitted shall be accompanied by a "Statement of Compliance," signed by the contractor or subcontractor or his or her agent who pays or supervises the payment of the persons employed under the contract and shall certify the following:

Initial _____

(1) That the payroll for the payroll period contains the information required to be provided under § 5.5 (a)(3)(ii) of Regulations, 29 CFR part 5, the appropriate information is being maintained under § 5.5 (a)(3)(i) of Regulations, 29 CFR 5, and that such information is correct and complete;

(2) That each laborer or mechanic (including each helper, apprentice, and trainee) employed on the contract during the payroll period has been paid the full weekly wages earned, without rebate, either directly or indirectly, and that no deductions have been made either directly or indirectly from the full wages earned, other than permissible deductions as forth in Regulations, 29 CFR part 3;

(3) That each laborer or mechanic has been paid not less than the applicable wage rates and fringe benefits or cash equivalents for the classification of work performed, as specified in the applicable wage determination incorporated into the contract.

(4) The weekly submission of a properly executed certification set forth on the reverse side of Optional Form WH-347 shall satisfy the requirement for submission of the "Statement of Compliance" required by paragraph (a)(3)(ii)(B)of this section.

(5) The falsification of any of the above certifications may subject the contractor or subcontractor to civil or criminal prosecution under section 1001 of title 18 and section 231 of title 31 of the United States Code.

iii.   The contractor or subcontractor shall make the records required under paragraph (a) (3)(i) of this section available for inspection, copying, or transcription by authorized representatives of the (write the name of the agency) or the Department of Labor, and shall permit such representatives to interview employees during working hours on the job. If the contractor or subcontractor fails to submit the required records or to make them available, the Federal agency may, after written notice to the contractor, sponsor, applicant, or owner, take such action as may be necessary to cause the suspension of any further payment advance, or guarantee of funds. Furthermore, failure to submit the required records upon request or to make such records available may be grounds for debarment action pursuant to 29 CFR 5.12.

**(4)  Apprentices and trainees:**

i.   Apprentices. Apprentices will be permitted to work at less than the predetermined rate for the work they performed when they are employed pursuant to and individually registered in a bona fide apprenticeship program registered with the U.S. Department of Labor, Employment and Training Administration, Office of Apprenticeship Training, Employer and Labor Services, or with a State Apprenticeship Agency recognized by the Office, or if a person is employed in his or her first 90 days of probationary employment as an apprentice in such an apprenticeship program, who is not individually registered in the program but who has been certified by the Office of Apprenticeship Training, Employer and Labor Services or a State Apprenticeship Agency (where appropriate) to be eligible for probationary employment as an apprentice. The allowable ratio of apprentices to journeymen on the job site in any craft classification shall not be greater than the ratio permitted to the contractor as to the entire work force under the registered program. Any worker listed on a payroll at an apprentice wage rate, who is not registered or otherwise employed as stated above, shall be paid not less than the applicable wage rate on the wage determination for the classification of work actually performed. In addition, any apprentice performing work on the job site in excess of the ratio permitted under the registered program shall be paid not less than the applicable wage rate on the wage determination for the work actually performed. Where a contractor is performing construction on a project in a locality other than that in which its program is registered, the ratios and wage rates (expressed in percentages of the journeyman's hourly rate) specified in the contractor's or subcontractors registered program shall be observed. Every apprentice must be paid at no less than the rate specified in the registered program for the apprentice's level of progress, expressed as a percentage of the journeymen hourly rate specified in the applicable wage determination. Apprentices shall be paid fringe benefits in accordance with the provisions of the apprenticeship program. If the apprenticeship program does not specify fringe benefits, apprentices must be paid the full amount of fringe benefits listed on the wage determination for the applicable classification. If the Administrator determines that a different practice prevails for the applicable apprentice classification, fringe shall be paid in accordance with that determination. In the event the Office of Apprenticeship Training, Employer and Labor Services, or a State Apprenticeship Agency recognized by the Office, withdraws approval of an apprenticeship program, the contractor will no longer be permitted to utilize apprentices at less than the applicable predetermined rate for the work performed until an acceptable program is approved.

ii.   Trainees. Except as provided in 29 CFR 5.16, trainees will not be permitted to work at less than the predetermined rate for the work performed unless they are employed pursuant to and individually registered in a program which has received prior approval, evidenced by formal certification by the U.S. Department of Labor, Employment and Training Administration. The ratio of trainees to journeymen on the job site shall not be greater than permitted under the plan approved by the Employment and Training Administration. Every trainee must be paid at not less than the rate specified in the approved program for the trainee's level of progress, expressed as a percentage of the journeyman hourly rate specified in the applicable wage determination. Trainees shall be paid fringe benefits in accordance with the provisions of the trainee program. If the trainee program does not mention fringe benefits, trainees shall be paid the full amount of fringe benefits listed on the wage determination unless the Administrator of the Wage and Hour Division determines that there is an apprenticeship program associated with the corresponding journeyman wage rate on the wage determination which provides for less than full fringe benefits for apprentices. Any employee listed on the payroll at a trainee rate who is not registered and participating in a training plan approved by the Employment and Training Administration shall be paid not less than the applicable wage rate on the wage determination for the classification of work actually performed. In addition, any trainee performing work on the

Initial _____

job site in excess of the ratio permitted under the registered program shall be paid not less than the applicable wage rate on the wage determination for the work actually performed. In the event the Employment and Training Administration withdraws approval of a training program, the contractor will no longer be permitted to utilize trainees at less than the applicable predetermined rate for the work performed until an acceptable program is approved.

   iii.   Equal employment opportunity. The utilization of apprentices, trainees and journeymen under this part shall be in conformity with the equal employment opportunity requirements of Executive Order 11246, as amended, and 29 CFR part 30.

(5) **Compliance with Copeland Act requirements.** The contractor shall comply with the requirements of 29 CFR part 3, which are incorporated by reference in this contract.

(6) **Subcontracts.** The contractor or subcontractor shall insert in any subcontracts the clauses contained in 29 CFR 5.5(a) (1) through (10) and such other clauses as the (write in the name of the Federal agency) may by appropriate instructions require, and also a clause requiring the subcontractors to include these clauses in any lower tier subcontracts. The prime contractor shall be responsible for the compliance by any subcontractor or lower tier subcontractor with all the contract clauses in 29 CFR 5.5.

(7) **Contract termination: debarment.** A breach of the contract clauses in 29 CFR 5.5 may be grounds for termination of the contract, and for debarment as a contractor and a subcontractor as provided in 29 CFR 5.12.

(8) **Compliance with Davis-Bacon and Related Act requirements.** All rulings and interpretations of the Davis-Bacon and Related Acts contained in 29 CFR parts 1, 3, and 5 are herein incorporated by reference in this contract.

(9) **Disputes concerning labor standards.** Disputes arising out of the labor standards provisions of this contract shall not be subject to the general disputes clause of this contract. Such disputes shall be resolved in accordance with the procedures of the Department of Labor set forth in 29 CFR parts 5, 6, and 7. Disputes within the meaning of this clause include disputes between the contractor (and any of its subcontractors) and the contracting agency, the U.S. Department of Labor, or the employees or their representatives.

(10) **Certification of eligibility.**

   i.   By entering into this contract, the contractor certifies that neither it (nor he or she) nor any person or firm who has an interest in the contractor's firm is a person or firm ineligible to be awarded Government contracts by virtue of section 3(a) of the Davis-Bacon Act or 29 CFR 5.12(a)(1).

   ii.   No part of this contract shall be subcontracted to any person or firm ineligible for award of a Government contract by virtue of section 3(a) of the Davis-Bacon Act or 29 CFR 5.12(a)(1).

   iii.   The penalty for making false statements is prescribed in the U.S. Criminal Code, 18 U.S.C. 1001.

(b) **Contract Work Hours and Safety Standards Act.** The Agency Head shall cause or require the contracting officer to insert the following clauses set forth in paragraphs (b)(1), (2), (3), and (4) of this section in full in any contract in an amount in excess of $100,000 and subject to the overtime provisions of the Contract Work Hours and Safety Standards Act. These clauses shall be inserted in addition to the clauses required by § 5.5(a) or § 4.6 of part 4 of this title. As used in this paragraph, the terms laborers and mechanics include watchmen and guards.

(1) **Overtime requirements.** No contractor or subcontractor contracting for any part of the contract work which may require or involve the employment of laborers or mechanics shall require or permit any such laborer or mechanic in any workweek in which he or she is employed on such work to work in excess of forty hours in such workweek unless such laborer or mechanic receives compensation at a rate not less than one and one-half times the basic rate of pay for all hours worked in excess of forty hours in such workweek.

(2) **Violation; liability for unpaid wages; liquidated damages.** In the event of any violation of the clause set forth in paragraph (b)(1) of this section the contractor and any subcontractor responsible therefor shall be liable for the unpaid wages. In addition, such contractor and subcontractor shall be liable to the United States (in the case of work done under contract for the District of Columbia or a territory, to such District or to such territory), for liquidated damages. Such liquidated damages shall be computed with respect to each individual laborer or mechanic, including watchmen and guards, employed in violation of the clause set forth in paragraph (b) (1) of this section, in the sum of $10 for each calendar day on which such individual was required or permitted to work in excess of the standard workweek of forty hours without payment of the overtime wages required by the clause set forth in paragraph (b) (1) of this section.

(3) **Withholding for unpaid wages and liquidated damages.** The (write in the name of the Federal agency or the loan or grant recipient) shall upon its own action or upon written request of an authorized representative of the Department of Labor withhold or cause to be withheld, from any moneys payable on account of work performed by the contractor or subcontractor under any such contract or any other Federal contract with the same prime contractor, or any other federally-Assisted contract subject to the Contract Work Hours and Safety Standards Act, which is held by the same prime contractor, such sums as may be determined to be necessary to satisfy any liabilities of such contractor or subcontractor for unpaid wages and liquidated damages as provided in the clause set forth in paragraph (b)(2) of this section.

(4) **Subcontracts.** The contractor or subcontractor shall insert in any subcontracts the clauses set forth in paragraph (b)(1) through (4) of this section and also a clause requiring the subcontractors to include these clauses in any lower tier subcontracts. The prime

Initial ___

contractor shall be responsible for compliance by any subcontractor or lower tier subcontractor with the clauses set forth in paragraphs (b) (1) through (4) of this section.

# Appendix F



## Roofing

### "Tiered Sub-Contractor Information Sheet"
*It is mandatory for the Sub-Contractor to fill this section should they be using a Tiered Sub-Contractor*

| | |
|---|---|
| Name: | |
| License Number: | |
| Address: | |
| Phone Number: | |
| Email: | |
| Tiered Sub-Contract Amount: | |

*Please provide a copy of the SF1413 Form issued to the Tiered Sub-Contractor.



Initial

# EXHIBIT 2

| Bond Number: 106725444 | Premium included in performance bond | |
|---|---|---|
| **PAYMENT BOND**<br>*(See Instructions on reverse)* | DATE BOND EXECUTED *(Must be same or later than date of contract)*<br>6/30/17 | **OMB Control Number: 9000-0045**<br>Expiration Date: 7/31/2019 |

Paperwork Reduction Act Statement - This information collection meets the requirements of 44 USC § 3507, as amended by section 2 of the Paperwork Reduction Act of 1995. You do not need to answer these questions unless we display a valid Office of Management and Budget (OMB) control number. The OMB control number for this collection is 9000-0045. We estimate that it will take 60 minutes to read the instructions, gather the facts, and answer the questions. Send only comments relating to our time estimate, including suggestions for reducing this burden, or any other aspects of this collection of information to: General Services Administration, Regulatory Secretariat Division (M1V1CB), 1800 F Street, NW, Washington, DC 20405.

| PRINCIPAL *(Legal name and business address)*<br>West Point Contractors, Inc.<br>59 E. Pennington<br>Tucson, AZ 85701 | TYPE OF ORGANIZATION *("X" one)*<br>☐ INDIVIDUAL  ☐ PARTNERSHIP  ☐ JOINT VENTURE<br>☒ CORPORATION  ☐ OTHER *(Specify)*<br>STATE OF INCORPORATION<br>Arizona | | | |
|---|---|---|---|---|
| SURETY(IES) *(Name(s) and business address(es))*<br>Travelers Casualty and Surety Company of America<br>One Tower Square<br>Hartford, CT 06183 | PENAL SUM OF BOND | | | |
| | MILLION(S)<br>———— | THOUSAND(S)<br>289 | HUNDRED(S)<br>115 | CENTS<br>00 |
| | CONTRACT DATE<br>6/29/17 | CONTRACT NUMBER<br>N62473-17-D-1411<br>Delivery Order No. N6247317F4083 | | |

## OBLIGATION:

We, the Principal and Surety(ies), are firmly bound to the United States of America (hereinafter called the Government) in the above penal sum. For payment of the penal sum, we bind ourselves, our heirs, executors, administrators, and successors, jointly and severally. However, where the Sureties are corporations acting as co-sureties, we, the Sureties, bind ourselves in such sum "jointly and severally" as well as "severally" only for the purpose of allowing a joint action or actions against any or all of us. For all other purposes, each Surety binds itself, jointly and severally with the Principal, for the payment of the sum shown opposite the name of the Surety. If no limit is indicated, the limit of liability is the full amount of the penal sum.

## CONDITIONS:

The above obligation is void if the Principal promptly makes payment to all persons having a direct relationship with the Principal or a subcontractor of the Principal for furnishing labor, material or both in the prosecution of the work provided for in the contract identified above, and any authorized modifications of the contract that subsequently are made. Notice of those modifications to the Surety(ies) are waived.

## WITNESS:

The Principal and Surety(ies) executed this payment bond and affixed their seals on the above date.

| PRINCIPAL | | | | |
|---|---|---|---|---|
| SIGNATURE(S) | 1.<br>*(Seal)* | 2.<br>*(Seal)* | 3.<br>*(Seal)* | Corporate<br>Seal |
| NAME(S) &<br>TITLE(S)<br>*(Typed)* | 1. ROBERT DOBBIN<br>PRESIDENT | 2. | 3. | |

| INDIVIDUAL SURETY(IES) | | |
|---|---|---|
| SIGNATURE(S) | 1.<br>*(Seal)* | 2.<br>*(Seal)* |
| NAME(S)<br>*(Typed)* | 1. | 2. |

| | CORPORATE SURETY(IES) | | | |
|---|---|---|---|---|
| **SURETY A** | NAME &<br>ADDRESS | Travelers Casualty and Surety Company of America<br>One Tower Square, Hartford, CT 06183 | STATE OF INCORPORATION<br>Connecticut | LIABILITY LIMIT<br>$ 210,360,000 |
| | SIGNATURE(S) | | 2. | Corporate<br>Seal |
| | NAME(S) &<br>TITLE(S)<br>*(Typed)* | 1. Elba McCullough, Attorney-In-Fact | 2. | |

AUTHORIZED FOR LOCAL REPRODUCTION<br>*Previous edition is NOT usable*

STANDARD FORM 25A (REV. 8/2016)<br>Prescribed by GSA-FAR (48 CFR) 53.2228(c)

| | | | | STATE OF INCORPORATION | LIABILITY LIMIT $ | |
|---|---|---|---|---|---|---|
| **SURETY B** | NAME & ADDRESS | | | STATE OF INCORPORATION | LIABILITY LIMIT $ | Corporate Seal |
| | SIGNATURE(S) | 1. | | 2. | | |
| | NAME(S) & TITLE(S) (Typed) | 1. | | 2 | | |
| **SURETY C** | NAME & ADDRESS | | | STATE OF INCORPORATION | LIABILITY LIMIT $ | Corporate Seal |
| | SIGNATURE(S) | 1. | | 2. | | |
| | NAME(S) & TITLE(S) (Typed) | 1 | | 2. | | |
| **SURETY D** | NAME & ADDRESS | | | STATE OF INCORPORATION | LIABILITY LIMIT $ | Corporate Seal |
| | SIGNATURE(S) | 1. | | 2. | | |
| | NAME(S) & TITLE(S) (Typed) | 1. | | 2. | | |
| **SURETY E** | NAME & ADDRESS | | | STATE OF INCORPORATION | LIABILITY LIMIT $ | Corporate Seal |
| | SIGNATURE(S) | 1. | | 2. | | |
| | NAME(S) & TITLE(S) (Typed) | 1. | | 2. | | |
| **SURETY F** | NAME & ADDRESS | | | STATE OF INCORPORATION | LIABILITY LIMIT $ | Corporate Seal |
| | SIGNATURE(S) | 1. | | 2. | | |
| | NAME(S) & TITLE(S) (Typed) | 1. | | 2. | | |
| **SURETY G** | NAME & ADDRESS | | | STATE OF INCORPORATION | LIABILITY LIMIT $ | Corporate Seal |
| | SIGNATURE(S) | 1. | | 2. | | |
| | NAME(S) & TITLE(S) (Typed) | 1. | | 2. | | |

Title at top of table: **CORPORATE SURETY(IES) (Continued)**

## INSTRUCTIONS

1. This form, for the protection of persons supplying labor and material, is used when a payment bond is required under 40 USC Chapter 31, Subchapter III, Bonds. Any deviation from this form will require the written approval of the Administrator of General Services.

2. Insert the full legal name and business address of the Principal in the space designated "Principal" on the face of the form. An authorized person shall sign the bond. Any person signing in a representative capacity (e.g., an attorney-in-fact) must furnish evidence of authority if that representative is not a member of the firm, partnership, or joint venture, or an officer of the corporation involved.

3. (a) Corporations executing the bond as sureties must appear on the Department of the Treasury's list of approved sureties and must act within the limitations listed therein. The value put into the LIABILITY LIMIT block is the penal sum (i.e., the face value) of the bond, unless a co-surety arrangement is proposed.

   (b) When multiple corporate sureties are involved, their names and addresses shall appear in the spaces (Surety A, Surety B, etc.) headed "CORPORATE SURETY(IES)." In the space designated "SURETY(IES)" on the face of the form, insert only the letter identifier corresponding to each of the sureties. Moreover, when co-surety arrangements exist, the parties may allocate their respective limitations of liability under the bonds, provided that the sum total of their liability equals 100% of the bond penal sum.

   (c) When individual sureties are involved, a completed Affidavit of Individual Surety (Standard Form 28) for each individual surety shall accompany the bond. The Government may require the surety to furnish additional substantiating information concerning its financial capability.

4. Corporations executing the bond shall affix their corporate seals. Individuals shall execute the bond opposite the words "Corporate Seal", and shall affix an adhesive seal if executed in Maine, New Hampshire, or any other jurisdiction requiring adhesive seals.

5. Type the name and title of each person signing this bond in the space provided.

STANDARD FORM 25A (REV. 8/2016) BACK

WARNING: THIS POWER OF ATTORNEY IS INVALID WITHOUT THE RED BORDER

# TRAVELERS

## POWER OF ATTORNEY

Farmington Casualty Company
Fidelity and Guaranty Insurance Company
Fidelity and Guaranty Insurance Underwriters, Inc.
St. Paul Fire and Marine Insurance Company
St. Paul Guardian Insurance Company

St. Paul Mercury Insurance Company
Travelers Casualty and Surety Company
Travelers Casualty and Surety Company of America
United States Fidelity and Guaranty Company

Attorney-In Fact No.          231028

Certificate No. 007245437

**KNOW ALL MEN BY THESE PRESENTS:** That Farmington Casualty Company, St. Paul Fire and Marine Insurance Company, St. Paul Guardian Insurance Company, St. Paul Mercury Insurance Company, Travelers Casualty and Surety Company, Travelers Casualty and Surety Company of America, and United States Fidelity and Guaranty Company are corporations duly organized under the laws of the State of Connecticut, that Fidelity and Guaranty Insurance Company is a corporation duly organized under the laws of the State of Iowa, and that Fidelity and Guaranty Insurance Underwriters, Inc., is a corporation duly organized under the laws of the State of Wisconsin (herein collectively called the "Companies"), and that the Companies do hereby make, constitute and appoint

Michael R. Strahan, Eleanor B. Strahan, and Elba McCullough

of the City of _____San Diego_____, State of _____California_____, their true and lawful Attorney(s)-in-Fact, each in their separate capacity if more than one is named above, to sign, execute, seal and acknowledge any and all bonds, recognizances, conditional undertakings and other writings obligatory in the nature thereof on behalf of the Companies in their business of guaranteeing the fidelity of persons, guaranteeing the performance of contracts and executing or guaranteeing bonds and undertakings required or permitted in any actions or proceedings allowed by law.

**IN WITNESS WHEREOF,** the Companies have caused this instrument to be signed and their corporate seals to be hereto affixed, this _____2nd_____ day of _____June_____ _____2017_____.

Farmington Casualty Company
Fidelity and Guaranty Insurance Company
Fidelity and Guaranty Insurance Underwriters, Inc.
St. Paul Fire and Marine Insurance Company
St. Paul Guardian Insurance Company

St. Paul Mercury Insurance Company
Travelers Casualty and Surety Company
Travelers Casualty and Surety Company of America
United States Fidelity and Guaranty Company

State of Connecticut
City of Hartford ss.

By: _____
Robert L. Raney, Senior Vice President

On this the _____2nd_____ day of _____June_____ _____2017_____, before me personally appeared Robert L. Raney, who acknowledged himself to be the Senior Vice President of Farmington Casualty Company, Fidelity and Guaranty Insurance Company, Fidelity and Guaranty Insurance Underwriters, Inc., St. Paul Fire and Marine Insurance Company, St. Paul Guardian Insurance Company, St. Paul Mercury Insurance Company, Travelers Casualty and Surety Company, Travelers Casualty and Surety Company of America, and United States Fidelity and Guaranty Company, and that he, as such, being authorized so to do, executed the foregoing instrument for the purposes therein contained by signing on behalf of the corporations by himself as a duly authorized officer.

In Witness Whereof, I hereunto set my hand and official seal.
My Commission expires the 30th day of June, 2021.

_____
Marie C. Tetreault, Notary Public

58440-5-16 Printed In U.S.A.

WARNING: THIS POWER OF ATTORNEY IS INVALID WITHOUT THE RED BORDER

This Power of Attorney is granted under and by the authority of the following resolutions adopted by the Boards of Directors of Farmington Casualty Company, Fidelity and Guaranty Insurance Company, Fidelity and Guaranty Insurance Underwriters, Inc., St. Paul Fire and Marine Insurance Company, St. Paul Guardian Insurance Company, St. Paul Mercury Insurance Company, Travelers Casualty and Surety Company, Travelers Casualty and Surety Company of America, and United States Fidelity and Guaranty Company, which resolutions are now in full force and effect, reading as follows:

RESOLVED, that the Chairman, the President, any Vice Chairman, any Executive Vice President, any Senior Vice President, any Vice President, any Second Vice President, the Treasurer, any Assistant Treasurer, the Corporate Secretary or any Assistant Secretary may appoint Attorneys-in-Fact and Agents to act for and on behalf of the Company and may give such appointee such authority as his or her certificate of authority may prescribe to sign with the Company's name and seal with the Company's seal bonds, recognizances, contracts of indemnity, and other writings obligatory in the nature of a bond, recognizance, or conditional undertaking, and any of said officers or the Board of Directors at any time may remove any such appointee and revoke the power given him or her; and it is

FURTHER RESOLVED, that the Chairman, the President, any Vice Chairman, any Executive Vice President, any Senior Vice President or any Vice President may delegate all or any part of the foregoing authority to one or more officers or employees of this Company, provided that each such delegation is in writing and a copy thereof is filed in the office of the Secretary; and it is

FURTHER RESOLVED, that any bond, recognizance, contract of indemnity, or writing obligatory in the nature of a bond, recognizance, or conditional undertaking shall be valid and binding upon the Company when (a) signed by the President, any Vice Chairman, any Executive Vice President, any Senior Vice President or any Vice President, any Second Vice President, the Treasurer, any Assistant Treasurer, the Corporate Secretary or any Assistant Secretary and duly attested and sealed with the Company's seal by a Secretary or Assistant Secretary; or (b) duly executed (under seal, if required) by one or more Attorneys-in-Fact and Agents pursuant to the power prescribed in his or her certificate or their certificates of authority or by one or more Company officers pursuant to a written delegation of authority; and it is

FURTHER RESOLVED, that the signature of each of the following officers: President, any Executive Vice President, any Senior Vice President, any Vice President, any Assistant Vice President, any Secretary, any Assistant Secretary, and the seal of the Company may be affixed by facsimile to any Power of Attorney or to any certificate relating thereto appointing Resident Vice Presidents, Resident Assistant Secretaries or Attorneys-in-Fact for purposes only of executing and attesting bonds and undertakings and other writings obligatory in the nature thereof, and any such Power of Attorney or certificate bearing such facsimile signature or facsimile seal shall be valid and binding upon the Company in the future with respect to any bond or understanding to which it is attached.

I, Kevin E. Hughes, the undersigned, Assistant Secretary, of Farmington Casualty Company, Fidelity and Guaranty Insurance Company, Fidelity and Guaranty Insurance Underwriters, Inc., St. Paul Fire and Marine Insurance Company, St. Paul Guardian Insurance Company, St. Paul Mercury Insurance Company, Travelers Casualty and Surety Company, Travelers Casualty and Surety Company of America, and United States Fidelity and Guaranty Company do hereby certify that the above and foregoing is a true and correct copy of the Power of Attorney executed by said Companies, which is in full force and effect and has not been revoked.

IN TESTIMONY WHEREOF, I have hereunto set my hand and affixed the seals of said Companies this _30th_ day of _June_ , 20 _17_ .

Kevin E. Hughes, Assistant Secretary



To verify the authenticity of this Power of Attorney, call 1-800-421-3880 or contact us at www.travelersbond.com. Please refer to the Attorney-In-Fact number, the above-named individuals and the details of the bond to which the power is attached.

## ACKNOWLEDGMENT

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California
County of _____ San Diego _____ )

On _____ June 30th, 2017 _____ before me, _____ E.B. Strahan, Notary Public _____
                                                (insert name and title of the officer)

personally appeared _____ Elba McCullough _____,
who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____        (Seal)

E. B. STRAHAN
Commission # 2080654
Notary Public - California
San Diego County
My Comm. Expires Jun 25, 2018